STATE EX REL. HEYL, Appellant, vs. HINKEL, City Clerk, and others, Respondents.

STATE EX REL. WISCONSIN TRUST CO., Trustee, Appellant, vs. HINKEL, City Clerk, and others, Respondents.

STATE EX REL. WISCONSIN TRUST CO., Guardian, Appellant, vs. HINKEL, City Clerk, and others, Respondents.

*January 28—April 20, 1909.*

*Taxation: Mortgages on land, with other security.*

1. Sec. 2, ch. 378, Laws of 1903, providing that "whenever taxable real estate shall be subject to mortgage, such mortgage for the purposes of taxation shall be deemed an interest in such real estate and shall be assessed and taxed as such interest in the assessment district in which such real estate is located, and not otherwise," applies to a mortgage on land in this state, to the extent of the value of the land, even though such debt is secured also by a mortgage on land without the state or by a mortgage of personal property.

2. Sec. 9 of said ch. 378, providing that the act shall not apply to mortgages upon property assessed or taxed in special ways, but "shall apply only to mortgages upon property subject to direct assessment and taxation under the general assessment and tax laws of the state," does not exclude from the operation of the act a mortgage on property subject to such direct assessment and taxation merely because it also covers other property.

APPEALS from judgments of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Reversed.*

*Certiorari* to review the action of the board of review in confirming an assessment against the holders of certain bonds of the Pabst Brewing Company. The facts appearing, without dispute, before the board of review were that each of the relators was a holder of certain such bonds, assessed at a value of about sixty per cent. of their face; that the Pabst Company had outstanding about $3,400,000 face value of such bonds secured by a mortgage or trust deed covering a large amount of taxed real estate, most of which was situated

in the city of Milwaukee, a considerable amount elsewhere in the state of Wisconsin, and about one sixth of the total in other states; that the true valuation of the real estate in Wisconsin considerably exceeded the face of the bonds, and that the assessed valuation of the real estate in Wisconsin considerably exceeded the assessed value of such bonds; that the Pabst Company elected to have the mortgage interest and the fee interest or equity of redemption assessed together without separation in all its Wisconsin lands; and that the assessments placed on said lands were intended to cover the entire title thereof. Upon these facts the several relators, owning together $2,409,000 face value of bonds, were assessed a total of $1,445,000 on account of said bonds as personal property. The circuit court entered judgments affirming the action of the board of review, and from those several judgments the relators appeal.

For the appellants there was a brief by *Thomas M. Kearney,* attorney for *Clara S. Heyl* and *Wisconsin Trust Company* as trustee, and by *Van Dyke & Van Dyke,* attorneys for *Wisconsin Trust Company* as guardian, and by *Quarles, Spence & Quarles,* of counsel; and the cause was argued orally by *Thomas M. Kearney* and *Louis Quarles.*

For the respondents there was a brief by *John T. Kelly,* city attorney, and *Benjamin Poss,* special assistant city attorney, and oral argument by *Mr. Poss.*

The following opinion was filed February 16, 1909:.

Dodge, J. The statute, upon which the rights of the parties depend, is ch. 378, Laws of 1903, of which the material part of sec. 2 is as follows:

"Whenever taxable real estate shall be subject to mortgage such mortgage [and the indebtedness secured thereby] for the purposes of taxation shall be deemed an interest in such real estate and shall be assessed and taxed as such interest in the assessment district in which such real estate is located, and not otherwise. . . ."

The contention of the respondents, adopted by the circuit court, is that no indebtedness which is secured by a mortgage on lands without the state or by a mortgage on personal property, in addition to a mortgage upon Wisconsin real estate, is included in this provision, and that is the only question presented for our consideration. Of course a statute which is plain and unambiguous and not absurd must be enforced according to its words. It neither requires nor permits construction to conform it to the court's view of a policy which it approves or believes, independently from the words of the act, the legislature intended. *Duluth, S. S. & A. R. Co. v. Douglas Co.* 103 Wis. 75, 79 N. W. 34; *State ex rel. Cook v. Houser,* 122 Wis. 534, 568, 100 N. W. 964. We find ourselves unable to discover any ambiguity in the words of this section, standing alone. The condition upon which the mortgage debt is to be taxed only as an interest in the real estate is plainly declared by the words "whenever taxable real estate shall be subject to a mortgage." The Wisconsin real estate of the Pabst Brewing Company was taxable and was subject to a mortgage. Upon such situation it would seem that nothing results as a duty either for administrative officers or for courts, except to carry into effect the plain legislative command that the debt secured shall be assessed and taxed as an interest in the real estate, and not otherwise, unless the result would be wholly absurd or would be subversive of the obvious purposes of the legislation as disclosed by other portions thereof enacted in context with that above quoted.

The policy of taxing credits and that of viewing the mortgage as an interest in real estate being conceded (*Kingsley v. Merrill,* 122 Wis. 185, 99 N. W. 1044), there is nothing absurd in declaring that every mortgage upon real estate in this state shall be taxed against the mortgagee as an interest in that real estate, to be separated and deducted from the entire or fee title, to the extent that the amount of the mortgage debt does not exceed the value of the land (*Chicago & N. W.*

*R. Co. v. State,* 128 Wis. 553, 638, 108 N. W. 557), whether the same indebtedness may also be protected by other security or not.   The debt is none the less reached for taxation in one case than in the other, and the machinery provided for administration is equally applicable and effective.

Neither are we able to discover anything subversive of the legislative policy disclosed in the legislation of 1903 in applying it to a mortgage on land in this state less than the value of the land, merely because there is other security for the mortgage debt.   In viewing this statute the legislative policy must be differentiated from the practical results in the working out of the law.   Most laws in their practical application result in surprises to their originators, and none more frequently than taxation laws.   The statute in question was so obviously the result of a very elaborate investigation and report by the tax commission, supplemented by a message from the governor, that reference to those documents is a very important aid in discovering the purpose sought. From the tax commission's report of 1901 and more especially 1903 (ch. V, p. 88 *et seq.*), the fact was made apparent that, notwithstanding existing laws intended to subject credits to taxation, in fact that large class of property in this state was in the main untaxed and practically exempt, not because of declared intent in the existing laws, but by reason of the practical working out of the conflict between statutes and natural laws and tendencies.   For illustration, it was disclosed in the report of 1903 that in one locality in the state the entire amount of intangibles assessed for taxation was less than $\frac{1}{100}$ of one per cent. of the total assessed value of all the property, and, while this was an extreme case, the percentage for the entire state prior to 1902 had been between one and three per cent., so that, as we have said, the great mass of credits owned by citizens of Wisconsin enjoyed practical exemption, and credits owned by nonresidents of the state complete exemption, although the latter creditors, many

of them, enjoyed security for such credits under mortgages upon Wisconsin real estate protected by our laws. The tax commission, too, pointed out to the legislature the futility of efforts to render the old method of taxation of credits in any material degree effective, as confirmed by experience in various jurisdictions. The report, amongst various others, presents the suggestions that of these credits which were then practically nontaxable, a considerable proportion were secured by mortgages on real estate, spread upon the public records of Wisconsin and therefore easy of discovery, and that these at least could be reached and made a basis for the taxation of the creditor, at least so far as the law could control contract relations or incidence of such tax. The governor in his message of that year (pp. 20, 21, Senate Journal) took up that phase of the subject and recommended that, since a half loaf was better than no bread, the legislature ought to reach creditors both within and without the state who, by recording mortgages here, had placed themselves within the ken and reach of taxing officers, and ch. 378 was enacted in deference to that recommendation. It nowhere in words discloses any purpose of exemption from taxation, but a purpose to reach for taxation a class of property which theretofore had largely escaped. It provided means which were intended to be, and but for the neglect of officials or contracts between parties would have been, efficient to compel such creditors to pay taxes on the value of such of their credits, at least in the first instance, for it authorized a sale of their mortgage security unless they did so, and authorized the debtor, in protection of his interest, to pay the tax on the mortgage interest and offset it against his debt; besides which, such tax could be collected from the creditor personally. *Allen v. Allen,* 114 Wis. 615, 626, 91 N. W. 218.

Thus was evinced very clearly a purpose to cast the primary burden of taxation upon the holders of such credits, whether they were residents within Wisconsin or outside of

it. That the practical working of the law has not confirmed its efficacy for the purposes intended is, as we have said, not surprising. In the first place, many lenders immediately took precaution to require of a debtor, as a condition of the making or continuance of a loan, that he agree to pay whatever taxes might fall upon the mortgage interest. In addition, a very large volume of the mortgages of the state were written upon blanks which required the mortgagor to pay all taxes upon the land, an ambiguous phrase which, however, the public seem to have construed as requiring him to pay all taxes on both interests. There were, however, a large number of mortgages in the state which contained no such provisions. Under the first two the mortgagors derived no benefit from a separate assessment on the mortgage interest and the fee, and the taxing officers, neglectful of the plain duty imposed by ch. 378, seemed to have adopted a practice to make no severance of the interests for purposes of assessment unless demanded, although there were, and doubtless are, many mortgages containing no agreement that the mortgagor pay the tax. Such conduct is of course in contradiction of the provision of sec. 3 that they might forego such severance only at the expressed option of the mortgagor. Thus has arisen whatever there is of exemption of debts secured by mortgages in this state. Had the assessors uniformly performed their duty to separately assess against all mortgagees the value of their interest in the land, a very considerable amount of such credits would have been found within the reach of the tax levy, at least until the maturity of the mortgages and the making of new contracts. Viewing the dominant purpose of this law, then, as one to impose a tax primarily upon the creditors, both those within and those outside of the state, there is nothing inconsistent therewith or subversive thereof in the separate assessment of every mortgage upon real estate in Wisconsin, and no reason for varying such course because the mortgage debt is protected by other

security. On the other hand, much of that important and dominant purpose would be defeated or obstructed upon a construction which limited the application of the law to a debt wholly secured by mortgage on Wisconsin real estate. It would offer to the parties an easy opportunity to evade such purpose by taking some slight additional security in the form of chattel mortgage, or mortgage upon land in another state, or even by pledge of collateral security, and thus enable the creditor, domestic or foreign, to assert inability of assessors to tax his credits because he held some security therefor other than the recorded mortgage upon Wisconsin lands, and also enable the debtor to claim right to offset such debt against any taxable credits owned by him, in evasion of the obvious purpose of sec. 6 of the act of 1903 (Laws of 1903, ch. 378), amending clause 2 of sec. 1056, Stats. (1898).

Counsel urge upon our attention *Brooks v. West Springfield,* 193 Mass. 190, 79 N. E. 337, where it was held that a mortgage, both upon Massachusetts and foreign real estate and personal property, excluded the debt from their statute providing for its assessment as part of the real estate. The facts in that case differed in that the mortgage debt largely exceeded the value of the Massachusetts land; but, apart from that distinction, we cannot consider that decision authority upon our peculiar statute, even if our reason were convinced as to its correctness under that of Massachusetts. Our statute requires the separate assessment of the mortgage "whenever taxable real estate is subject thereto." The Massachusetts statute exempted the debt "when it was secured by a mortgage on Massachusetts land." By a somewhat refined and technical construction it is possible to hold that a debt is not secured by a mortgage on specified land when in fact it enjoys other security, while no refinement can exclude such a situation from the condition of our statute, namely, "whenever the land shall be subject to the mortgage." Another

citation of respondents is *Newark v. Merchants' Ins. Co.* 55 N. J. Law, 145, 146, 26 Atl. 137, which excluded from an exemption a debt secured by mortgage on both real and personal property; but that case dealt with a statute so variant from ours as to hardly warrant comparison and to make its reason inapplicable here.

It is suggested by respondents that sec. 9 of the same statute, by its final clause, excludes a mortgage which contains any property not subject to direct taxation, but we cannot discover any such meaning in that section. It is directed to the exception from the law, generally, of mortgages upon property taxable by license fee or the like, such as that of railroads, and the final clause, which declares that the act applies only to mortgages upon "property subject to direct assessment and taxation under the general assessment and tax laws," is obviously in mere definition of the antithesis to those which are excluded. Besides, the mortgage in question is upon property subject to direct assessment and taxation none the less because it may cover some other property, at least to the extent that the value of indebtedness is within the value of the real estate subject to such direct taxation.

Finding no reasons sufficient to warrant us in disregarding the plain words of the statute, no course is open except to give it effect according to those words, and to hold that the mortgage in question and the debt thereby secured is assessable and taxable as an interest in the real estate in Wisconsin subject thereto "and not otherwise." Hence that the act of the board of review in assessing that debt, or any part of it, as personal property was unauthorized by law.

*By the Court.*—Judgment in each case is reversed, and cause remanded with directions to enter judgments reversing the action of the board of review as demanded in the petitions.

A motion for a rehearing was denied April 20, 1909.