Aberg and others, as Trustees, Plaintiffs and Appellants, vs. Moe and others, Defendants and Respondents: Regents of the University of Wisconsin, Defendants and Appellants.

*February 7—March 5, 1929.*

Eschweiler, J., dissents.

350

For the appellants there was a brief by *Sanborn, Blake & Aberg, Glen H. Bell*, the *Attorney General*, and *Franklin E. Bump*, assistant attorney general, all of Madison, and oral argument by *Mr. Bump, Mr. Bell, Mr. John B. Sanborn*, and *Mr. W. J. P. Aberg*.

For the respondents there was a brief by *Frank Jenks*, attorney, and *Harry L. Butler*, of counsel, both of Madison, and oral argument by *Mr. Butler, Mr. Jenks*, and *Mr. Ray M. Stroud* of Madison.

The following opinion was filed March 5, 1929:

ROSENBERRY, J. The transaction by which the Board of Regents became invested with the title to the premises in

question is attacked with great vigor on the grounds (1st) that the regents were without power to enter into the transaction; (2d) that the statute exempted neither the fee nor the term for years; (3d) that neither the plaintiffs nor the regents have any standing in equity to assert that any interest is tax exempt, it being alleged that the transaction was ineffectual and inoperative to accomplish a transfer of the title to the property or any interest therein.

The transaction may in its simplest terms be regarded as one in which plaintiffs have transferred to the Board of Regents the title to certain lands, and have received back from the Board of Regents a lease for thirty years upon the conditions set forth, with the result that the Board of Regents will acquire a full and unincumbered title to the lands at the end of the thirty-year period in consideration of the exemption of the property from taxation during that period. There is no use of attempting to becloud the issue by stating it in dubious or doubtful terms or by involving it in legal mysteries.

When the assessor of the city of Madison came to place the taxable property of the city upon the assessment roll, he found the legal title to this property in the Board of Regents. We have been referred to no authority and a diligent search has failed to reveal any authority for the proposition that the taxing authorities of the city of Madison have any right to go behind this transaction and attempt either in a court of equity or elsewhere to have it declared void for the purpose of placing the property upon the tax roll. The state is not in its endeavor to assess and collect its revenues required at its peril to ascertain the true ownership of the property assessed as between private persons who may or might have claims thereto. Its tax claim against the property is the same whether it is assessed to the true owner or the ostensible owner or to an unknown person, except only that where it is not assessed to the owner, no

personal liability may accrue for the tax so assessed and levied. Whatever may be said of the transaction in question it is clearly not so void as to be a *nudum pactum*. The plaintiffs certainly had the power and authority to convey the land and the Board of Regents had power and authority to accept the conveyance. It cannot be denied that in a proper case the Board of Regents has power to make a valid and binding lease; nor can it be denied that the plaintiffs have the power and authority to enter into a lease. Therefore, until some one who has an interest in the property in question attacks the validity of the transaction it must stand as an accomplished fact.

What challenges one's attention here is not so much the strictly legal aspects of the situation as the fact that the Board of Regents has exercised a power vested in it in an unexpected and unusual way. Whether it should, in exchange for the tax-exemption privilege, seek to acquire property as it has done in this case, is a matter of conscience for the Board of Regents. We are charged with no duty to scrutinize its conclusions, and certainly we cannot substitute our judgment for that of the board charged by the law with the duty and responsibility of making a decision. If the board acts within its powers and thereby accomplishes a purpose which should not be accomplished in that manner, it is responsible to its creator, the legislature, and not to the courts.

We come now to a consideration of the taxability of the property as the title is presently vested. The exemption is claimed under the provisions of sec. 70.11, Stats.:

"The property in this section described is exempt from taxation, to wit:

"(1) That owned exclusively by the United States or by this state except lands contracted to be sold by the state. . . ."

It is first urged that it was not within the statute because not exclusively owned. It is considered that this phrase

"exclusively owned" refers to a joint ownership, such a relation as might exist between tenants in common. The state may be a co-owner of lands with other parties, in which event that interest owned exclusively by the state would be exempt, that not owned exclusively by the state would not be exempt. It is considered that it does not apply to an interest in land such as a leasehold. This is made quite clear by reference to other provisions of the statutes. The provision relating to religious, scientific, etc., associations is that the personal property owned shall be exempt "which is used exclusively for the purposes of the association." It is use rather than ownership that determines the exemption. In the case of real property owned by such associations it shall be exempt if not leased, etc. In the case of the state and its agencies it is the title rather than the use which determines whether or not it is exempt. The provision of sub. (4) of sec. 70.11, "The occasional leasing of such buildings for schools, public lectures or concerts, or the leasing of such parsonages, shall not render them liable to taxation," indicates that it was the legislative purpose to require the property of religious, scientific, etc., associations to be used exclusively for the purposes of the association. Sub. (5), relating to the property of county agricultural societies, provides: "Property owned and used exclusively," etc. Here the title and the use must unite in order that the exemption may attach. If it was the legislative intent and purpose to exempt lands owned by the Board of Regents only when they were used exclusively for the purposes of the corporation, the statute would no doubt have so provided. Its omission in that connection is certainly very significant in view of other language employed in the statute.

Assuming as we must that in this case the transaction is valid, it not being challenged by any one having the right to challenge it, it must be held that the property in question is owned exclusively by the State or the Board of Regents on

its behalf. To be sure, the plaintiffs own some rights or interests in the property which is owned by the Board of Regents. They may be said to own the use of the property. We shall not attempt to indulge in any metaphysical distinctions in this case as to the meaning of the word "ownership" for the reason that the legislative intent and purpose seems clear.

We are urged upon the authority of *Merrill R. & L. Co. v. Merrill,* 119 Wis. 249, 96 N. W. 686, to apply a very strict rule to the situation with which we are dealing. While it is an ordinary rule of law that statutes exempting property are to be strictly construed in favor of the state, we are of the opinion that when the exemption is in favor of the state itself, the reason for the rule fails.

But it is urged that the interest of the lessees is taxable in any event from whatever angle the transaction may be viewed. Sec. 70.08 provides:

"The terms 'real property,' 'real estate' and 'land,' when used in this title, shall include not only the land itself but all buildings and improvements thereon, including buildings on leased lands, and all fixtures and rights and privileges appertaining thereto, and also private railroads and bridges."

### Sec. 70.17 provides:

"Real property shall be entered in the name of the owner, if known to the assessor, otherwise to the occupant thereof if ascertainable, and otherwise without any name. . . . Real property held under lease from any religious, scientific, literary or benevolent association, but otherwise exempt, shall be assessed to the lessee. All buildings on lands under lease or permit, including buildings located on railroad right of way or on other lands not subject to local assessment, shall be assessed as real estate to the owners of such buildings. . . ."

Under the provisions of these statutes, throughout the

history of the state lands have been assessed to the owner. No doubt the legislature might empower the assessor to assess the leasehold interest against the lessees and so divide up the property for the purposes of taxation. That, however, has never been the policy of our law so far as we know except for a brief period when the state undertook to tax the respective interests of the mortgagor and mortgagee separately. The entire property, including all interests in it, is assessed to the owner of the property as defined in the statute, and the right of every person claiming any interest in the property subordinate to the fee, whether under lease, contract, or otherwise, is extinguished if the property be sold in the exercise of the taxing power. If we were now to hold that the interest of a lessee under a lease should be separately assessed, how could it be held in other cases that where assessed to the owner the interest of the lessee could be cut off. If a lease creates a separable taxable interest in the lessee in one case it does in all cases. The fact that the fee is exempt in one case and not in another does not change the nature of the lessee's interest. A holding to that effect would involve a complete reversal of the public policy of this state throughout its history, and if a change of that kind is to be brought about it should be done by legislative action, not by a judicial holding made to fit a particular case.

The property in this case, if assessable at all, was assessable to the Board of Regents of Wisconsin because exclusively owned by the board. The board was the owner; all interests in the property are subordinate to its title. If in the hands of the board it is exempt, then it is wholly exempt. It is the property that is exempt, not the board. To tax the interest of the plaintiffs as lessees is to tax property owned by the Board of Regents, the use of which has been let to the plaintiffs, and is in direct violation of the statute, which exempts it from taxation.

*By the Court.*—Judgment reversed, and cause remanded with directions to the lower court to enter judgment granting the prayer of plaintiffs' complaint.

The following opinion was filed March 11, 1929:

ESCHWEILER, J. (*dissenting*). I agree with so much of the majority opinion as declares that the transaction here involved is one where the controlling purpose was to permit an evasion by a private corporation of the burden of tax-paying sharing in the expenses of government. I refrain from any expression, one way or the other, concerning the suggestion in the majority opinion that the situation was "a matter of conscience." I join with the majority in leaving untouched and unsolved many delicate questions presented when considering whether the regents get their title to this real property by way of gift (sec. 20.39 (8), Stats.), or by purchase, either under their general powers as a body corporate (sec. 36.03), or under the specific and extremely guarded purchasing power bestowed upon them by the legislature by sec. 11 of ch. 116 of the Laws of 1919, now sec. 36.065. This of course makes it unnecessary to now discuss among the many such questions,—if it be considered a purchase, as to the nature of the consideration passing from the Board of Regents as vendee to the University Co-Operative Company as vendor; whether such purchase involves the pledging of the credit of the state; or any more than as hereinafter mentioned, whether, if such consideration be in whole or in part the lifting of the burden of paying taxes during the life of the lease, such is within any express or implied powers of the Board of Regents, and whether that body properly functions in so dispensing with or disposing of that which would otherwise be a fund coming to the state and the city of Madison as a general tax.

I cannot agree that it is within the express grant of

power by the legislature by secs. 36.03, 36.06, 36.062, 36.065, and 36.08 *et seq.,* Stats., or within any implied powers of the Board of Regents of the State University by presently taking mere record title, to thereby substitute their judgment or determination for that of the legislature so as to permit real property, devoted exclusively to the use of a profit-making, private corporation to be nevertheless as exempt from the wide-reaching scope of the primary, paramount legislative declaration found in sec. 70.07, *infra,* as real property, devoted to state or public use, is, by the legislature, expressly exempted.

Neither can I agree with the statement in the majority opinion that it is mere ownership and not the use to which this real property may be put which is the controlling factor in the determination of questions such as here presented, for I believe the exemption theory to be that it is because property is devoted to state use that it is exempt, and not because of mere formalities surrounding the title. I further believe that it is the property as distinguished from the title thereto that is the subject matter for taxation.

Neither can I agree with the proposition, in effect determined by the majority, that if the parties to a contract such as was here involved raise, as between themselves, no question as to its validity, that the taxing authorities of the state are thereby blindfolded and prevented from determining what the real situation is and what are the facts, which latter alone should determine all questions of tax exemption.

The majority opinion in effect now declares that by this agreement for tax-exemption purposes, a private corporation, that has present possession and right of possession, present use and present right of use of real estate, is elevated into a favored class and may continue such tax-free possession and use for thirty years subject only to the right in the University, by eminent domain (a power which it needs not this contract to give it), to terminate the same

at its option, before the end of such period. Not until terminated as above or by subsequent agreement or the expiration of the thirty years could this real estate be lawfully subject to *University purposes.* If it can be done for thirty years, it may for ninety-nine or more.

It is being declared in three cases decided herewith : *Tigerton Lumber Co. v. Tigerton, post,* p. 377, 224 N. W. 124, that—

"The fundamental rule is that all property not exempted by law is subject to taxation and that all taxes must be paid in cash; the taxpayer who claims exemptions must find authority for that privilege in the statutes."

In *Nash Sales, Inc. v. Milwaukee, ante,* p. 281, 224 N. W. 126, it is said:

"The universal rule of taxation is that 'taxes shall be levied upon all property in this state except such as is exempted therefrom.' "

And again in *Wis. Pub. Serv. Corp. v. Wis. Tax Comm., ante,* p. 259, 224 N. W. 130:

"Such assessment—*i. e.* under sec. 76.02 (9)—may be in the name of the owner, the lessee, or the operating company; but in whosesoever name it is assessed it shall include *every interest* therein."

Recently this court said in *Schmidt v. Almon,* 181 Wis. 244, 194 N. W. 168, that—

"It is the express policy of the state that no property which is assessable for taxation purposes shall escape taxation, and it will appear from the various statutes on the subject of taxation that it was the legislative intent, as far as reasonably possible, to carry out this policy."

And in this last case, upon the above quotation as a foundation, it was held that standing timber, although treated as personal property by its separate sale, as between a vendee and the owner of the real property, should nevertheless be considered as real estate for tax purposes. In *Mariner v. Milwaukee,* 146 Wis. 605, 609, 131 N. W. 442, where

one refrained for thirty-two years from asserting his ownership to a certain city lot to which the city asserted title and for that reason failed to assess it, it was said:

"Taxes are debts due to the government which a property owner has no more right to withhold than the most sacred debt of a private nature."

In face of all these declarations, and many more might be cited, it is now held that a favored private corporation, one which may be but the forerunner of countless other possible friendly arrangements, is permitted, without express or implied legislative sanction, to continue as a private enterprise for profit to enjoy the exclusive possession of real estate, yet freed from tax burdens resting on all of its competitors.

That this private concern, University Co-Operative Company, enjoying the use and possession of this real property with a leasehold interest therein, can escape having such interest assessed under the all-embracing legislative mandate that all property, save such as comes within express exemptions, shall be subject to taxation, because of want of an express statement in the mere procedural statute, sec. 70.17, that a "leasehold" may be taxed, and especially so as that very section provides that it may be assessed "without any name," seems to me to be placing a very narrow construction upon the imperative legislative mandate that all property except such as is *exempted* shall bear its share in the expenses of the government which protects and preserves it, and such holding presently exalts the privilege of exemption above the duty to pay taxes.

We have no such statutory situation here as was presented in *Loomis v. Callahan,* 196 Wis. 518, 220 N. W. 816, involving the leasing of university lands to non-profit corporations, because there the statute involved, sec. 36.06 (6), (being ch. 525, sec. 2, Laws of 1927), expressly provided: "and the *leasehold* interest in such lands, shall be

exempt from taxation." Such legislative declaration was superfluous because the present holding is that a leasehold is not subject to tax.

Though leaseholds may be technically denominated by sec. 230.05 as "chattels real," yet that surely does not exclude such interests in real estate from the universally embracing phrase "all property," as found in sec. 70.07, Stats., designating "What property taxable," as follows: "Taxes shall be levied upon *all property* in this state except such as is exempted therefrom."

This section is followed by secs. 70.08 and 70.09, defining, for the purposes of taxation, the terms "real property" and "land," and "personal property;" the latter statutory definition concluding, "and all . . . *chattels,* and effects, of any nature or description, having any real or marketable value, and *not included* in the term *'real property'* as above defined."

I cannot conceive how the Board of Regents or this court can lightly brush aside the evident purpose of the three sections just above cited so as to exclude from taxation the substantial property interest which the University Co-Operative Company have by their exclusive right to the use and possession for private profit-making purposes of this real estate. That their property interest is separate and distinct from that assumed by the University under this contract would seem too plain to raise a question or require debate. Being a substantial property interest, with a real or marketable value, I think such interest, whether as real property as defined in sec. 70.08, *supra,* or as personal property as defined in sec. 70.09, *supra,* should be required to pay its proportionate share of taxes and not be treated, as it virtually is by the present majority holding, to be so much or so little of either "real property" or "personal property" as to be, for taxation purposes, neither, and thus to intrude

upon or usurp the area or status heretofore exclusively occupied and maintained by the coffin of Mahommed.

I think the definition given by the majority opinion to the phrase in the exemption statute, sec. 70.11 (1), asserted here, namely, "owned exclusively," is not the definition that was intended by the legislature and clearly contrary to the prior decisions of this court, particularly *Comstock v. Boyle,* 144 Wis. 180, 128 N. W. 870, where such particular phrase was being considered, and it was there expressly stated (p. 186) that such phrase necessarily meant "ownership *free* from any kind of *legal* or *equitable interests in any one else.*" And in *Milwaukee v. Milwaukee County,* 95 Wis. 424, 69 N. W. 819, where the plaintiff, the city, was in possession of real estate under an option to purchase, yet nevertheless that situation, far stronger than that occupied by the Board of Regents here, could not (p. 427) exempt such property from taxation by the state.

There has never heretofore been found any difficulty in treating as subject to taxation as real estate that which, in other regards, would be considered personal property. So as to a leasehold in a situation quite similar to that here presented in *Jetton v. University of the South,* 208 U. S. 489, 28 Sup. Ct. 375, where it is said (p. 500) :

"As long as different interests may exist in the same land, we think it plain that an exemption granted to the owner of the land in fee does not extend to an exemption from taxation of an interest in the same land, granted by the owner of the fee to another person as a lessee for a term of years. The two interests are totally distinct, and the exemption of one from taxation plainly does not thereby exempt the other,"—

which case is followed in *Millsaps College v. Jackson,* 275 U. S. 129, 48 Sup. Ct. 94. Such interests as that of mortgagor and mortgagee in the same real estate may be separately assessed and each regarded as real estate, as in *Chi-*

*cago & N. W. R. Co. v. State,* 128 Wis. 553, 637, 639, 646, 108 N. W. 557; *State ex rel. Heyl v. Hinkel,* 139 Wis. 41, 43, 119 N. W. 815; *Savings & Loan Soc. v. Multnomah County,* 169 U. S. 421, 425, 427, 428, 18 Sup. Ct. 392. A partner's interest in a partnership property, though some of such be real estate, may be taxed as personal property (*Blodgett v. Silberman,* 277 U. S. 1, 12, 48 Sup. Ct. 410), and so, by statute and decisions, may be the real estate used by railroads. Rails and track materials in *Langlade v. Crocker Chair Co.* 190 Wis. 226, 229, 208 N. W. 799, and factory machinery in *State ex rel. Gisholt M. Co. v. Norsman,* 168 Wis. 442, 445, 169 N. W. 429, were taxable as real estate.

Manifestly under the majority opinion it is now rendered possible for the Board of Regents to permit all manners and forms of private enterprise from beauty shoppes to butcher shops by similar profitable arrangements to come within the tax-exemption aura of the State University. It permits that body to substitute its judgment for that of the legislature in determining that certain real estate, however much it may be in the full possession and control of private enterprise, shall nevertheless be relieved from its share of the expenses of government to which all other general taxpayers must submit. It creates a new tax-exemption creator.

The legislature, the body with the exclusive powers over taxation and exemption (secs. 1 and 5, art. VIII, and sec. 17, art. I, Const.), and charged with the duty of providing for the support of the University (sec. 6, art. X, Const.), has heretofore been recognized as the proper source from which to obtain the necessary appropriations for the maintenance and growth of the University and cannot well be charged with being lax or niggardly in that regard. The legislature has carefully made express provision by law for the acquisition of property by and for the support of the University (see sec. 20.39, Basic Appropriations; sec. 20.41,

Appropriations, etc.), and as discussed in *Loomis v. Callahan, supra,* it has, and but recently, expressly provided for certain specified building projects involving leasehold interests and expressly exempting such interests from taxation. Under the present decision the Board of Regents may now assume that special legislative function of granting exemptions without any express authority. It may well be questioned if the restrictions, so carefully provided for the purchase of full title in fee only of land within the University area as made by the legislature (sec. 11, ch. 116, Laws of 1919, sec. 36.065, Stats.), are now anything more than mildly permissive.

For these reasons I think the court below was right.

A motion for a rehearing was denied, with $25 costs, on June 4, 1929, and the following opinion was filed July 8, 1929:

*On rehearing.*

PER CURIAM. In denying the motion for rehearing attention is called to the fact that no private property is escaping taxation under the decision in this case. Nor is there any probability that the fantastic consequences urged in support of the motion for rehearing will ensue. Public officials are presumed to do their duty and to use wisely and not abuse the powers conferred upon them.

It is rather absurd to say that property which is consumed in the transaction set forth in the opinion thereby escapes its share of the public burdens. No one has questioned the reasonableness or fairness of the actuarial basis of the transaction so far as it concerns the state. In this as in other matters of like kind questions of public policy are for the legislature, not the court.