ABKA LIMITED PARTNERSHIP, Plaintiff-Appellant,†

v.

BOARD OF REVIEW OF the VILLAGE OF FONTANA-ON-GENEVA-LAKE, Defendant-Respondent.

Court of Appeals

*No. 98–0851. Submitted on briefs November 30, 1998.—Decided January 27, 1999.*

(Also reported in 591 N.W.2d 879.)

†Petition to review granted.

551

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Alan Marcuvitz* and *Andrea Roschke* of *Weiss, Berzowski, Brady & Donahue, LLP* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Robert Horowitz* of *Stafford, Rosenbaum, Rieser & Hansen* of Madison.

Before Brown, Nettesheim and Anderson, JJ.

NETTESHEIM, J. ABKA Limited Partnership appeals from a circuit court order affirming a decision of the board of review of the Village of Fontana-On-Geneva-Lake to uphold the 1996 and 1997 assessments of The Abbey on Geneva Lake Resort (the Property). ABKA raises the following challenges to the assessment: (1) in applying the capitalization of income approach, the assessor erred by including income from the management of off-site condominium rentals; (2) the assessor erred in ignoring actual figures reflecting operation income and costs in favor of adjusted figures; and (3) the assessor improperly "rounded" the assessment by 2% from $8,328,025 to $8,500,000.

We conclude that the assessor properly included the income from the off-site condominium rentals when applying the income approach because the operation and income from the management of these units are "inextricably intertwined" with the operations of the Property. We further conclude that the assessor's adjustment of the Property's income and expenses to reflect an average level was not improper. We therefore affirm that portion of the circuit court order upholding the assessor's inclusion of the income from managing the condominium rentals and the adjustment of actual income and expenses.

However, we agree with ABKA that the assessor's "rounding" of the final assessment is not supported by law. Accordingly, we reverse that portion of the order which upholds the assessor's "rounding" of the final

assessed value. We remand with directions to reduce the rounded assessment to the actual assessed value.

## FACTS

The Abbey on Geneva Lake Resort is owned and managed by ABKA. In 1996, the property was assessed at $8,500,000.[1] ABKA challenged the assessment before the board on December 11, 1996. While ABKA agreed with the use of the capitalization of income approach to value the Property and the capitalization rate applied, it challenged the net operating income used by the assessor.[2]

---

[1] The 1996 assessment also included assessments for the following:

Personal property (owned by ABKA) $1,789,900

Unsold dockominium units (owned by ABKA) $4,465,000

Sold dockominium units (not owned by ABKA) $6,917,000

These values are not disputed by ABKA and are not at issue in this appeal.

[2] The basic principles underlying the income approach were discussed in *Waste Management, Inc. v. Kenosha County Board of Review*, 184 Wis. 2d 541, 561–63, 516 N.W.2d 695, 703–04 (1994). An assessor uses the income approach to convert the future benefits likely to be derived from real estate into an estimate of present market value. *See id.* at 561, 516 N.W.2d at 703; *see also* 1 *Property Assessment Manual for Wisconsin Assessors*, 7–20 (Rev. 12/96).

The basic mechanics of the methodology are as follows: An assessor first determines the net annual income of the property. This figure is reached by deducting estimated operating expenses from the property's gross income. The assessor also selects a capitalization rate by considering the discount and recapture rates suitable for such an investment as well as the applicable effective tax rate. Finally, the assessor applies a capitalization rate to the net annual income to yield the present value of the expected income stream over the life of the property.

In arriving at the net operating income, the assessor included ABKA's income from the management of the rental of condominium units that are adjacent to the Property. The condominium units are not owned by ABKA and are assessed individually to their owners. However, the renters of the units have full access to the amenities of the Property, including the spa, recreation building, indoor pool, tennis courts and restaurants. Pursuant to an agreement between the condominium owners and ABKA, ABKA receives 50% of the gross revenues from the rental of each unit. In return, ABKA provides services, including advertising, reception desk services and cleaning. The rental condominium management fees account for over $300,000 of the Property's yearly revenue.

Both the village assessor, Fred Matthes, and ABKA's expert appraiser, Frank Karth, testified before the board as to the propriety of including the rental condominium management fees as income. Matthes testified in support of his inclusion of the management fees in the Property's income which contributed to his assessment of $8,500,000. Karth testified that the income should not have been included and that the proper appraisal of the Property is $5,382,000.

Following a hearing on December 11, 1996, the board voted to uphold the 1996 assessment. On March 12, 1997, ABKA filed an action for certiorari review of the board's determination. The village's 1997 assessment of the Property was again $8,500,000. By stipulation, the parties agreed that the board's determination as to the 1997 assessment could be made on the basis of the 1996 hearing record. On August 6, 1997, the board sustained the 1997 assessment. In a

*Waste Management*, 184 Wis. 2d at 561, 516 N.W.2d at 703–04.

stipulation filed September 29, 1997, the parties agreed that ABKA's certiorari actions for the 1996 and 1997 assessments should be consolidated.

On February 3, 1998, the circuit court issued a decision affirming the board's determination finding that "the decision of the board was based on substantial evidence and was according to law." The court reasoned that "the commissions from the rental units are 'inextricably intertwined' with the Property" such that the commissions were properly included as income. ABKA appeals.

## *DISCUSSION*

■■■

This is a statutory certiorari appeal pursuant to § 70.47(13), STATS. As such, we review the findings and conclusions of the board, not the judgment and findings of the circuit court. *See Waste Management, Inc. v. Kenosha County Bd. of Review*, 184 Wis. 2d 541, 554, 516 N.W.2d 695, 700–01 (1994). Nonetheless, we value the decision of the circuit court. *See Scheunemann v. City of West Bend*, 179 Wis. 2d 469, 475, 507 N.W.2d 163, 165 (Ct. App. 1993). In reviewing the board's ruling, we apply the following factors: (1) whether the board acted within its jurisdiction; (2) whether the board acted according to law; (3) whether the board's action was arbitrary, oppressive or unreasonable, representing its will rather than its judgment; and (4) whether the evidence was such that the board might reasonably make the order or determination in question. *See Waste Management,* 184 Wis. 2d at 554, 516 N.W.2d at 701.

The board's determination is subject to reversal if the board failed to follow the statutory basis for the tax assessment; however, if the assessment follows the

statutory basis, it must be upheld if it can be supported by any reasonable view of the evidence. *See id.* at 554–55, 516 N.W.2d at 701.

*Management Income*

■

ABKA first contends that the assessor erred by including income from the management of the rental condominiums. ABKA argues that the income from the condominiums does not appertain to the Property within the meaning of § 70.03, STATS. That statute provides in relevant part: " 'Real property,' 'real estate' and 'land' . . . include not only the land itself but all buildings and improvements thereon, and all fixtures and rights and privileges appertaining thereto . . . ." *Id.* We conclude that the assessor's inclusion of the management income from the condominium rental units was appropriate.

In *State ex rel. N/S Associates v. Board of Review*, 164 Wis. 2d 31, 53, 473 N.W.2d 554, 562 (Ct. App. 1991), we discussed the valuation of property under § 70.03, STATS. There, the owner of a shopping mall argued that in fixing the fair market value of the mall at the price for which it was sold, the assessor and the board improperly included the mall's "business value." *See id.* at 52, 473 N.W.2d at 562. We held that the key inquiry to be made is "whether the value is appended to the property, and is thus transferable with the property, or whether it is, in effect, independent of the property so that the value either stays with the seller or dissipates upon sale." *Id.* at 54, 473 N.W.2d at 562. We concluded:

> [The] mall's *raison d'etre*—namely, the leasing of space to tenants and related activities such as trash

disposal, baby stroller rentals, etc.—is a transferable value that is inextricably intertwined with the land and "all buildings and improvements thereon, and all fixtures and rights and privileges appertaining thereto," sec. 70.03, Stats., just as the transferable value of a farm—the growing of crops—is inextricably intertwined with the property from which the farm operates. In light of Wisconsin's pre-eminent focus on what property will bring in an arm's-length sale as the basis of value, tax assessment under section 70.32(1), Stats., may include as a component of value the property's transferable income-producing capacity that is reflected by a recent sale.

*Id.* at 55, 473 N.W.2d at 563 (footnote omitted).

Later, in *Waste Management,* this court again considered the application of the income approach and the use of the "business value" as a factor in arriving at the assessment. In rejecting Waste Management's contention that business value is excluded from a real estate property assessment using the income approach, this court stated: "*N/S Associates* appears to recognize that certain business value may in fact be 'appended' to the real estate rather than personal to the owner. According to the reasoning of the court, such appended value is 'inextricably intertwined' with the land and is transferred to the new owner upon a sale of the land." *See Waste Management,* 184 Wis. 2d at 564, 516 N.W.2d at 705.

Here, the assessor determined that ABKA's entitlement to 50% of the income generated by condominium rentals was "inextricably intertwined" with the Property. Therefore, the income derived by ABKA from the management of the rental condominiums is a value appended to the property. ABKA contends that "[s]uch income has nothing to do with the

land upon which the realty company has its office, but has everything to do with the realty company's management capabilities and business expertise." We disagree. We conclude that the assessor's inclusion of the income is in accordance with the statutory basis and is supported by a reasonable view of the evidence.

Matthes testified before the board as to the reasons underlying his determination that the rental income was "appended" to the property within the meaning of § 70.03, STATS. Matthes explained that the rental condominiums are adjacent to the Property. The Abbey resort advertises the condominium units and includes rates for the condominium rentals in its publications. Because of the proximity of its office, ABKA is able to provide facilities and services that directly affect the attractiveness of the property to prospective renters. The condominium owners benefit from the resort amenities of the Property as do those who rent the condominiums. In addition, condominium renters make reservations through The Abbey and check in at The Abbey.

Matthes additionally testified that the rental income was represented by ABKA and included in an appraisal report for financing purposes. In Matthes' opinion, a potential purchaser of the Property would consider the rental contract between the condominium owners and ABKA and would insist that it be included in the sale of the Property because the contract is so dependent upon the use of the Property. Finally, Matthes testified that in considering the holdings of *N/S Associates* and *Waste Management*, he was satisfied that the value of the rental arrangement appended to and is transferable with the property.

ABKA contends that *N/S Associates* and *Waste Management* do not support including the challenged

income in the income stream of the Property. First, ABKA argues that the management fees for renting off-site condominium units is not generated by the Property itself, and therefore the income should not be included. We disagree. As the board points out, the income from the management fees *is* generated from services provided on the Property:

> It is generated by the publicity that the hotel puts out making the condominiums available, including them in its rate card and packages. It is generated at the switchboard that takes reservations. It is generated at the reception desk which checks people in and out. It is generated by the amenities of the hotel that attract people to rent the condominiums in the first place.

ABKA's contention that the income approach requires that the income be produced directly by the property being assessed is too restrictive an application of the "inextricably intertwined" test, and it overlooks that the management fees are produced in large part on the Property. Moreover, Matthes properly considered that the existence of the contract would make the Property more attractive to a potential purchaser. *See* 1 *Property Assessment Manual for Wisconsin Assessors*, 9–7 (Rev. 12/96) (the income approach can be used by the assessor "because it represents the way investors think when they buy and sell income property in the market").

Next, ABKA contends that, unlike *N/S Associates* where the court upheld the inclusion of the "business value" in assessing mall real estate because the two were "inextricably intertwined," the management income here is easily distinguished from the income generated by the Property. That is too simplistic an

approach. While the management income is easily distinguished, it is nevertheless income which is "inextricably intertwined" with the operation of the Property which is generated in part on the Property. We conclude, as did the board, that the management income is "inextricably intertwined" with the Property.

Contrary to ABKA's contention, our decision in *Waste Management* does not dictate a different result. *Waste Management* recognized that the income approach is used only when a recent sale of the subject property, a sale of reasonably comparable property or a valid cost approach are not available. In that instance, the income approach may be applied. However, the net income must reflect the property's chief source of value and the net income must be produced without the labor and skill of the owner. *See Waste Management*, 184 Wis. 2d at 565–66, 516 N.W.2d at 705. The net income which is attributed to the labor and skills of the owner must be factored out. *See id.* at 566, 516 N.W.2d at 705.

ABKA argues that the management income is not the Property's chief source of value and that the income is directly attributable to ABKA's labor and skill. We are unpersuaded. In *Waste Management*, we stated: "We expect that the income approach based on net owner-operator income is permissible only in very limited circumstances . . . . The property must be such that the net income reflects the property's chief source of value." *Id.* at 565–66, 516 N.W.2d at 705. We agree with the circuit court that whether net income reflects the property's chief source of value is relevant to whether the income approach should be applied. Here, the parties agreed both before the board and on appeal that the income approach was appropriate.

Once the income approach is applied, there must be a determination as to what portion of the income

must be excluded as attributable to the skill and work of the owner. ABKA argues that "[t]he record does not establish that a new owner of the Property would be able to maintain the same management and continue the previously established relationship between ABKA and the condominium owners, or be able to profitably manage the units." However, the management contract transfers with the property. The contract allows for the assignment of the contract by ABKA or by a condominium owner and provides for the binding nature of the contract to all successors and assigns of both parties.

In assessing the property, Matthes considered the contract language in determining that the management arrangement is appended to the property and is transferable. Contrary to ABKA's contention, Matthes' conclusion is supported by evidence in the record.

The board found that the management contract is assignable and that the condominium rental units have been managed by the owners of the Property for approximately eighteen years. Further, the board found that the management income was not dependent upon ABKA's skill and labor but rather would exist regardless of who was operating the resort. We agree that the Property and management of the resort are so intertwined with the management of the condominiums that any owner of the resort will be able to generate rental income from the condominiums. The services provided for the management fees—advertising, desk services, cleaning and maintenance—are all linked to the operation of the resort. In other words, the skill and labor required to maintain the management income are skills that any potential owner of a hotel would have and are not specific to ABKA.

We reject ABKA's contention that the board relied upon an erroneous theory of law in upholding the board's assessment. We conclude that the assessment was in accordance with the law.

ABKA further contends that the assessor's inclusion of the condominium rental income in the valuation of the Property violates Wisconsin's unitary taxing rule. *See Cornell Univ. v. Rusk County*, 166 Wis. 2d 811, 822, 481 N.W.2d 485, 490 (Ct. App. 1992) (concluding that "the legislature established a unitary taxing scheme under sec. 70.32, Stats."). We disagree.

Citing to *Aberg v. Moe*, 198 Wis. 349, 359, 224 N.W. 132, 136 (1929), ABKA argues that interest in property cannot be divided or separately assessed. Rather, the entire property, and all interests in it, are assessed to the owner of the property. *See id.* However, the assessment of the Property does not include a tax on the condominium real property or a tax on an interest belonging to the condominium property. Rather, included in the Property's assessment is a tax on the income derived from the *management* of the condominium property—an interest that we have already determined belongs to the assessed Property. We therefore reject ABKA's contention that the inclusion of the management income violates Wisconsin's unitary taxing rule.

## Stabilization of Income

■

ABKA contends that the assessor relied on incorrect assumptions in setting the assessment because he ignored actual data in applying the income approach. The board responds that Matthes properly relied upon the actual revenues and expenses from the 1994 and 1995 operating statements in constructing a "stabilized

operating statement" for the 1996 assessment. We agree with the board.

At the hearing, Matthes testified that he prepared a "stabilized operating statement" that he relied on in arriving at the assessed value. Matthes explained that a "stabilized operating statement" examines the history of an operation over a period of time to try to eliminate anomalies in the flow of income and to project stabilized income or expense levels for the future. ABKA argues that in assessing the Property, Matthes increased the valuation by minimizing expenses while attributing more income than historically experienced.

Specifically, ABKA first challenges Matthes' allowance of 8% of its gross income for general and administrative expenses in addition to 3.75% for a management fee. According to ABKA, this resulted in an allowance of $1.7 million when it had actually expended $1.8 million and $2.1 million respectively in the two previous years. ABKA further contends that Matthes improperly allowed only 4% of the gross income for maintenance and repairs which was over $300,000 less than the average of the two prior years' experience.

In explaining why he had allowed 8% of the Property's gross income for administrative and general expenses instead of averaging the 1994 and 1995 actual figures, Matthes explained that the management expenses were included in the 1994 and 1995 actual figures and, therefore, were allocated out. Also, the administrative and general expenses for the Property was a figure that was largely in excess of that for other similar properties. Matthes concluded that 8% of the gross was typical on a national and regional basis for similar types of property. The board was entitled to rely on this testimony.

564

As for the maintenance and repairs, Matthes allowed only 4% of the gross income. Although the Property had been generating expenses somewhat higher than in previous years, Matthes viewed this as a result of repair and remodeling projects that normally would be "capitalized out" over a period of years. Matthes' approach is supported by the *Property Assessment Manual*, 9–11 to 9–13.

Next, ABKA contends that Matthes attributed more income to the Property than historically experienced thereby increasing the ultimate valuation. Specifically, ABKA challenges Matthes' valuation of its marina fuel sales. While sales had dropped in the two years prior to the assessment, Matthes attributed the value at the highest level previously attained. Between 1994 and 1995, marina fuel sales dropped by approximately $960,000. However, Matthes explained that the 1995 sales did not present an accurate reflection of income because the dockominium units and the boat slips were beginning to be sold for private use. Because the 1994 income represented the most recent statement during full occupancy of the marina, Matthes relied upon that figure.[3]

---

[3] ABKA cites to four cases in support of its contention that the courts require the use of actual income instead of market or estimated income in applying an income approach: *State ex rel. Park Plaza Shopping Center, Inc. v. Board of Review*, 61 Wis. 2d 469, 213 N.W.2d 27 (1973); *Darcel, Inc. v. City of Manitowoc Board of Review*, 137 Wis. 2d 623, 405 N.W.2d 344 (1987); *Metropolitan Holding Co. v. Board of Review*, 173 Wis. 2d 626, 495 N.W.2d 314 (1993); and *City of West Bend v. Continental IV Fund*, 193 Wis. 2d 481, 535 N.W.2d 24 (Ct. App. 1995). ABKA's reliance on these cases is misplaced.

In *Park Plaza*, the court did not require the use of actual figures. There, as here, one assessor used estimated figures to

Finally, ABKA objects to Matthes' methodology. In arriving at the assessed value, Matthes took the Prop-

arrive at a stabilized income estimate while the other assessor used actual figures. *See Park Plaza*, 61 Wis. 2d at 476, 213 N.W.2d at 30. The court recognized that this amounted to "only a difference in opinion." *Id.* While not requiring the use of actual income figures, the court stated: "Certainly it cannot be error for an assessor to use an actual figure rather than resorting to a subjective standard." *Id.*

The issue in *Darcel* was whether a property tax assessment was properly based on market rental income when there was a recent arms-length sale of the property from which to determine fair market value. *See Darcel*, 137 Wis. 2d at 624, 405 N.W.2d at 344. The court held: "[A]ctual rents of arms-length leases must be considered as a factor in determining market value. . . . [A] recent arms-length sale of the property is the 'best information' to arrive at the full tax assessment value of that property, and capitalization of so-called 'market' rent is not the best evidence of value in the presence of such a sale." *Id.* at 640, 405 N.W.2d at 351. In this case, the parties agree that there was no recent arms-length sale by which to assess the property.

The third case ABKA relies upon, *Metropolitan Holding*, concerned a property encumbered by HUD restrictions on the amount of rent that could be collected. The court held that the use of estimated market rents violated § 70.32(1), STATS., because the estimated market rents did not reflect the true market value of the property. *See Metropolitan Holding*, 173 Wis. 2d at 631–33, 495 N.W.2d at 316–18. Any buyer of the property would be similarly limited by the HUD restrictions.

Then, in *City of West Bend*, the court considered whether a property encumbered by a long-term lease should be valued using estimated market value or by actual rental income generated under the lease. The court concluded that the board did not err in reducing the property tax assessment to reflect what the property owner would receive in the sale of the property based upon income generated under the lease. *See City of West Bend*, 93 Wis. 2d at 489, 535 N.W.2d at 27. It held: "Where property is

erty's total gross revenue, based on the stabilized operating statement, and then subtracted the total departmental operating expenses and the total deductions to arrive at a gross operating profit. He then deducted the fixed expenses to arrive at a net income before subtracting the amount of reserves—the amount the business maintains in an account for anticipated expenses associated with replacing worn or broken items. Matthes then arrived at a net operating income to which he applied a capitalization rate of 12.9%. The resulting value was $18,313,930 which included the value of the personal property and the dockominiums both sold and unsold. Matthes then subtracted the personal property and the dockominium values to arrive at his final assessed value of $8,328,025 which he then rounded to the nearest half million, $8,500,000.

ABKA contends that Matthes improperly applied an "inverse methodology" in arriving at his assessment of the Property because he valued all of the property owned by ABKA and others and then subtracted the values of the components in order to arrive at the total value of the Property. However, we have reviewed the property assessment manual and find nothing to suggest that Matthes' approach was improper.[4]

---

encumbered by a bundle of rights, we must appraise or assess the property at its value using the current value of those bundle of rights." *Id.* Unlike the properties in *Metropolitan Holding* and *City of West Bend*, the Property at issue in this case is not subject to any encumbrances that would limit an estimated or projected income.

[4] ABKA argues that this "inverse methodology" was disapproved of by the supreme court in *State ex rel. Gisholt Machine Co. v. Norsman*, 168 Wis. 442, 448–49, 169 N.W. 429, 431

In addition to challenging Matthes' methodology, ABKA further contends that Matthes subtracted only 53.8% of the value of the sold dockominiums when he should have subtracted 100% of the value. ABKA argues that had Matthes subtracted 100% of the value, his derived value for the Property would have been lower than that advocated by ABKA. When questioned on this issue before the board, Matthes offered the following explanation:

> Under Wisconsin law all property has to be assessed in terms of its fair market value. As those . . . dockominiums were being sold off, they were being sold off in terms of their individual value as dockominium units with the associated common rights that were familiar to them. . . . Under Wisconsin

---

(1919). ABKA's reliance on *Gisholt* is misplaced. *Gisholt* did not involve the application of the income method of assessment.

*Gisholt* involved the assessment of two parcels of real property, one having improvements. *See id.* at 449, 169 N.W. at 431. The assessor in Gisholt "valued the land independent of the buildings, and then valued the buildings independent of the land, and arrived at a total valuation by adding the two items together." *Id.* at 448, 169 N.W. at 431. The realtor contended that the assessor should have used an "inverse method" and first valued the land and improvements as a whole and then apportioned the total. *See id.* at 449, 169 N.W. at 431. The supreme court disagreed, finding that the law required the assessor to first value the land irrespective of the improvements. *See id.* The court's holding was based upon its interpretation of an assessor's statute at issue in that case. The statute expressly required the assessor "to enter in one column 'the value of the land, exclusive of the buildings thereon; in a separate column under the head "Improvements," he shall enter the value of such buildings, together with machinery and fixtures therein.' " *Id.* There is no such statutory language at issue in this case.

> law, they have to be valued in terms of their individual sale price as individual units per their individual description. However, as a unit grouping of . . . 185 units combined as one package, they will capitalize out at a much lower value per unit. In effect, value was created when they were split up and sold off as separate condominiums. . . .
>
> What I have done here is valued them in terms of their total contribution as a group, capitalized out as rental value of 185 units.

Therefore, Matthes' valuation discounted the sale value of the dockominiums because the dockominiums as a group, prior to individual sale, do not carry the same value.

In challenging Matthes' inclusion of only 53.8% of the dockominiums sale values, ABKA does not challenge Matthes' explanation nor do we find it to be unreasonable. ABKA simply contends that its expert appraiser used a different approach without showing why that method is any more reliable or accurate than that used by Matthes. *See State ex rel. Park Plaza Shopping Ctr., Inc. v. Board of Review*, 61 Wis. 2d 469, 476–77, 213 N.W.2d 27, 30 (1973). We reject ABKA's argument.

We conclude that the assessor's valuation of the property was made in accordance with the law and, therefore, the board's decision must be upheld. *See Waste Management*, 184 Wis. 2d at 554–55, 516 N.W.2d at 701. "

*"Rounding" the Assessment*

Last, ABKA challenges the board's "rounding" of the assessment from $8,328,025 to $8,500,000 as contrary to § 70.32(1), STATS., which requires that assessments reflect fair market value. The board does

569

not dispute that the assessor "rounded" the assessed value by 2%. Instead, the board contends that "ABKA cites no authority for its claim that it was an error to make a rounding which amounted to only 2 percent of the assessment." However, the board cites no authority supporting the rounding.

The board's determination must be upheld only if it is in accordance with the law and is supported by any reasonable view of the evidence. *See Waste Management*, 184 Wis. 2d at 554–55, 516 N.W.2d at 701. Because there is no evidence or law that supports the assessor's rounding of the assessed value by $172,000, we conclude that it was error.

## CONCLUSION

We conclude that the board's determination that the management income is "inextricably intertwined" with the Property is in accordance with the law and is supported by a reasonable view of the evidence. We further conclude that the assessor's reliance upon a stabilized operating statement was not improper. We affirm these portions of the circuit court's order. However, we reverse that portion of the order upholding the assessor's "rounding" of the final assessed value. We remand with directions to reduce the rounded assessment to the actual assessed value.

No costs to either party.

*By the Court.*—Order affirmed in part, reversed in part and cause remanded.