SCHMIDT, Appellant, vs. TOWN OF ALMON and another, Respondents.

*May 5—June 18, 1923.*

*Taxation: Standing timber: Method of assessment.*

1. An examination of secs. 70.08, 70.17, 70.32, 75.01, 74.01, and 74.06, Stats. 1921, discloses that it was the legislative intent that standing timber be considered as an element of land value and be assessed to the owner of the land, there being nothing in the statute authorizing a special assessment against the timber.
2. The legislative object in requiring the assessment to the landowner is to make the collection of taxes certain and prevent taxable property escaping taxation.
3. The sole means whereby the owner of land can secure relief from the statutory assessment is by contract with the purchaser of the timber.

APPEAL from an order of the circuit court for Shawano county: EDGAR V. WERNER, Circuit Judge. *Affirmed.*

The appeal is from an order sustaining a general demurrer of each of the defendants to the plaintiff's complaint.

*P. J. Winter* of Shawano, for the appellant.

For the respondent *Town of Almon* there was a brief by *Dillett & Fischer* of Shawano.

For the respondent *Bowler Lumber Company* there was a brief by *Eberlein & Larson* of Shawano, and oral argument by *M. G. Eberlein.*

DOERFLER, J. Plaintiff's complaint alleges that she is the owner of certain lands located in the town of *Almon,* Shawano county, Wisconsin, which lands, exclusive of the timber thereon, are of the reasonable value of $4,000 and that the standing timber growing thereon is of the reasonable value of $8,000; that said standing timber had been sold to the defendant *Bowler Lumber Company,* and that the proper taxing authorities for said town for the year 1920 assessed and levied a tax upon both the land and the standing timber against the plaintiff for the sum of $306; that at the time of such assessment they had knowledge of the sale of the standing timber to the defendant lumber company, but, notwithstanding such knowledge, illegally levied the assessment for both the timber and the land against the plaintiff; that the plaintiff tendered an alleged proportionate share of the tax, being one third thereof, to the town treasurer, claiming at the time that the timber should have been assessed to the defendant lumber company, which tender the treasurer refused, and that she thereupon paid the entire tax under protest; that plaintiff thereafter filed a claim against the town for the sum of $204, claiming that such amount was illegally assessed against her, which claim was disallowed by the town, and thereupon this action was begun; and under the amended complaint a recovery was demanded against the town for the sum of $204, being the

amount claimed by the plaintiff as having been illegally assessed against her and which in law she claimed should have been assessed against the lumber company; and claiming further that in the event that the court should hold that the assessment was properly and legally made and levied against the plaintiff, that then she be permitted to recover from the lumber company, by way of contribution, the sum of $204, the amount which, under such circumstances, she had paid for the benefit of the lumber company in order to protect her title from a tax sale. A general demurrer by each of the defendants to the plaintiff's complaint was sustained by the court, and the plaintiff thereupon prosecuted this appeal from the order sustaining such demurrers.

The principal issue thus presented involves the question whether, in a case where one person owns the naked land and another the standing timber thereon, there should be a separate assessment for such land against the owner thereof and another against the owner of the timber for the reasonable value thereof, or whether both the land and the standing timber should be treated as one unit and assessed against the owner of the land.

The identical question has not heretofore come before this court for decision, and while there are decisions in other states upon the subject they can be of little value in this state, because in the final analysis the determination must be based upon a construction of the statutes of this state.

Sec. 70.17, Stats., in part provides:

"Real property shall be entered in the name of the owner, if known to the assessor, otherwise to the occupant thereof if ascertainable, and otherwise without any name."

Sec. 70.32 provides:

"Real property shall be valued by the assessor from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale. In determining the value the assessor shall consider, as to each piece, its ad-

vantage or disadvantage of location, quality of soil, quantity of standing timber, water privileges, mines, minerals, quarries, or other valuable deposits known to be available therein, and their value. . . :"

The foregoing sections and others herein referred to constitute the principal statutory provisions for an assessment of real estate. The term "real property" used in sec. 70.17 means the land and its appurtenances. Such real property must be assessed to the owner if known. If the owner is not known, then the assessment is against the occupant, and by such occupant is meant the person who occupies the land. Sec. 70.32 prescribes the method to be followed by the assessor in the valuation of the real estate and the elements of value to be taken into consideration in arriving at the assessment. Among such elements is the existence of standing timber upon the land. When such valuation shall be fixed as a result of a compliance with the provisions of sec. 70.32, the assessment must be levied as a unit against the real estate, and the timber itself constitutes but an element of value of the real estate proper, namely, the land. So that under the two sections above quoted a legislative intent is made manifest for the assessment of the land as a unit, and not for a separate assessment against the owner of the standing timber.

Sec. 70.08, contained in ch. 70 of the Statutes, entitled "Assessment of taxes," provides:

"The terms 'real property,' 'real estate,' and 'land,' when used in this title, shall include not only the land itself, but all buildings and improvements thereon, including buildings on leased lands, and all fixtures and rights and privileges appertaining thereto, and also private railroads and bridges."

Here we have a legislative declaration expressly defining what shall be included in the term "real property," and under such section an exception is made with respect to buildings on leased premises and all fixtures and rights and

privileges appertaining thereto. Under the statutes of this state and under the decisions of this court such buildings and fixtures on leased lands are assessable as real estate. Nothing contained in this section refers to standing timber, and it would appear that if it had been the legislative intent to require a separate assessment for such timber such provision would have been included in such section.

Sec. 74.06, Stats., provides:

"The treasurer shall receive the tax on any part of any lot or parcel of land or on any undivided share or interest therein which the person paying the tax will clearly define; and if the tax on the remainder of such lot or parcel of land shall remain unpaid such treasurer shall return such remainder and the tax due thereon as delinquent to the county treasurer; and if the part on which the tax is so paid shall be an undivided share the person paying the same shall state to the treasurer the name of the owner of such share, that it may be excepted in case of sale for the tax on the remainder, for which purpose the treasurer shall enter the name of such owner and a specification of such share in his account of uncollected taxes; and the balance of the taxes on any such land shall be a lien on the residue only of such lot or parcel of land; . . ."

Under this section the owner may pay the tax on any part of a lot or parcel of land or on any undivided share or interest therein. Clearly this section refers only to a situation where an owner desires to save from tax sale a portion of the assessed property, or where, being the owner of an undivided share or interest and not of the whole property, he desires to pay the tax on his share or interest only, leaving the other shares or interests assessed to be paid by their respective owners or to be sold for taxes. Under no construction of this statute can it be said that the legislature intended a separation of the taxes with respect to standing timber on the land. While such statute contemplates a separation only in such instances where the same involve

merely a matter of computation and not one of assessment, a division of a tax based both upon land and timber involves every element necessary and included in an assessment. Such statute therefore cannot support the claim that timber should be separately assessed.

If any further doubt exists as to the legislative intent, a careful examination of chapters 74 and 75 of the Statutes will dispel the same. Sec. 74.01 provides that:

"All taxes levied *upon any tract or parcel of land* . . . shall be a lien thereon until paid . . . ; and all taxes levied upon any lands . . . shall also be a lien on all logs, wood and timber cut upon such lands subsequent to the first day of May in the year in which such taxes are levied. . . ."

Pursuant to the provisions of this section, the standing timber, if reduced to personal property subsequent to May 1st in the year in which the taxes are levied against the land, is chargeable with a lien for the taxes assessed against the land, and such lien can be enforced for the collection thereof in accordance with this and subsequent sections. It will be noted also that such section refers first specifically to taxes levied upon any *tract or parcel of land*. A lien is thus created on a tract or parcel of land and upon the timber cut therefrom under the conditions in said section provided, and it follows that, where the timber is owned by one not the owner of the land, it becomes subject to a lien for the taxes upon the land, and thus clearly the legislature has manifested its intent of assessing only the owner of the land, which would include the timber as an element of its value. Special reference is also made to the provisions of sec. 75.01, Stats.

It is the expressed policy of the state that no property which is assessable for taxation purposes shall escape taxation, and it will appear from the various statutes on the subject of taxation that it was the legislative intent, as far as reasonably possible, to carry out this policy. To require

a separate tax to be levied on the standing timber would create a situation whereby the collection of a tax in many instances would become impossible. Large portions of the timber interests in this state have been held by nonresidents, and where the timber, by such nonresidents, is caused to be removed from the land, an enforcement of the collection of the tax would often be utterly impossible. It is true that this court has repeatedly held that a sale of growing timber constitutes an interest in the real estate. *Lillie v. Dunbar,* 62 Wis. 198, 22 N. W. 467; *Williams v. Jones,* 131 Wis. 361, 366, 111 N. W. 505. If such interest were assessable to the owner and the tax be not otherwise collected, it would become necessary to sell the same for taxes in the same manner as lands are salable for delinquent taxes. Before the issuance of a tax certificate, frequently, and still more often before the issuance of a tax deed upon such interest, the standing timber would be cut and removed. The innumerable difficulties which would confront the proper officials in the collection of such a tax require no comment.

The one important and controlling factor persuasive of the contention that the legislature did not intend a separate assessment for growing timber is made manifest by the utter absence of any statutory provision so providing.

It is conceded that under the decision of this court in *Western L. & C. Co. v. Copper River L. Co.* 138 Wis. 404, 410, 120 N. W. 277, it was held, under facts similar to those in the instant case, that the purchaser of standing timber obtains an interest in land subject to a condition subsequent, on the happening of which the right to remove the timber from the land terminates. See, also, *Smith v. Scott,* 31 Wis. 437; *Golden v. Glock,* 57 Wis. 118, 15 N. W. 12; *Hicks v. Smith,* 77 Wis. 146, 46 N. W. 133; *Williams v. Jones,* 131 Wis. 361, 111 N. W. 505; *Peshtigo L. Co. v. Ellis,* 122 Wis. 433, 100 N. W. 834.

In *Bretz v. R. Connor Co.* 140 Wis. 269, 272, 122 N. W.

717, it was held as the settled doctrine of this court that in a conveyance of timber similar to the one in the instant case, only such timber passed in the deed as is removed during the time specified in the deed. (Citing also numerous other Wisconsin decisions on this subject.)

But whatever may be said of the interest in land which a purchaser of growing timber derives on a sale or contract, such interest is a qualified one, and may be lost entirely by a failure to remove the timber within the period of limitation provided for in the deed or contract. Such timber, therefore, is not assessable to the purchaser until he has reduced it to possession by cutting it, and we agree with what was said by the learned trial judge in his opinion, that under circumstances like those in the instant case, upon the sale of growing timber to be removed during the time limitation it becomes the duty of the owner of the land to pay the taxes and thus conserve the title during such time as he by agreement has specified for the removal of such timber.

Originally almost the entire state was covered with standing timber, and the practice followed in the instant case, whereby the owner of the land sells the standing timber, to be removed within a limited time, retaining the title to the naked land, has been in vogue from the territorial period up to the present time, and notwithstanding the vast interests which were involved during this period, covering more than three quarters of a century in time, the legislature has not seen fit to either expressly provide for a separate assessment or to indicate in such a manner as to force the conclusion that it contemplated a separate assessment. On the other hand, it is well known that it has been the opinion of the profession in this state that under the statutes there is but one assessment contemplated, which requires both timber and land to be assessed as one unit against the owner of the land. In view of the vast importance of the subject involved and the tremendous interests which have been the subject of bargain and sale during so long a period of time, and

the failure of the legislature to otherwise provide, the construction so placed upon the statutes and assented to is persuasive that such view so held is correct. A large part of Northern Wisconsin, particularly in the earlier days, was covered with a variety of pine and other timber, such timber standing upon land which in itself was to a large extent unproductive, and where the timber represented by far the greater element of value in such lands. Those engaged in the lumbering industry, as a rule, had no occasion to use the land itself excepting in so far as it was necessary in the removal of the timber, and the owners of the naked lands therefore realized, especially in cases where a long period of time was provided for the removal of the timber, that provision should be made for an assumption on the part of the purchaser of the timber of a reasonable share of the taxes, and so the subject here involved generally has become and is now recognized as a proper basis for a contract relation.

We therefore conclude: 1. That no legislative provision is contained in the statutes pursuant to which a separate assessment can be levied against standing timber. 2. That an examination of the statutes above referred to is conclusive that it was the legislative intent that standing timber shall be considered as an element of land value, and shall be assessed to the owner of the land. 3. That the legislative object in requiring such assessment is to make the collection of taxes certain and to prevent taxable property from escaping taxation. 4. That the only means whereby the owner of the land can secure relief from the statutory assessment is by contract with the purchaser of the timber.

Under this view of the case it is not necessary to consider any of the other assignments of error.

*By the Court.*—The order of the lower court sustaining the two demurrers is therefore affirmed.