Demetrieus LASKARIS, Phillip Corow, Raymond Parchem, Richard Preissel, Andreja Sabol, and C. C. Van Wie, Plaintiffs-Appellants,

v.

CITY OF WISCONSIN DELLS, INC., Defendant-Respondent.

Court of Appeals

*No. 84–2160. Submitted on briefs November 22, 1985.—Decided April 24, 1986.*
(Also reported in 389 N.W.2d 67.)

For the plaintiffs-appellants there was a brief by *Michael J. Collins* and *Collins, Beatty & Krekeler, S.C.,* of Madison.

For the defendant-respondent there was a brief by *James P. Gerlach,* city attorney, and *Mary A. Pieters,* assistant city attorney.

Brief of amicus curiae was filed by *Michael P. May* and *Boardman, Suhr, Curry & Field* of Madison on behalf of Municipal Electric Utilities of Wisconsin.

Before Gartzke, P.J., Dykman, J., and Eich, J.

GARTZKE, P.J. Demetrieus Laskaris, Phillip Dorow, Raymond Parchem, Richard Preissel, Andreja Sabol and C.C. Van Wie, appeal from a judgment dismissing their complaint against the City of Wisconsin Dells. Plaintiffs seek a declaration that sec. 7.02(7) of the city's ordinances is invalid and an injunction against its enforcement. The ordinance provides that special assessments for delinquent electric bills may be levied against the real estate served to become a lien on the property and placed on the tax roll with the

same effect as other city taxes.[1] The city owns and operates its own electric utility.

---

[1] Section 7.02(7) of the city's ordinances provides:

(a) In addition to other methods provided by law, it is hereby provided that special assessments for delinquent electric bills may be levied in accordance with the provision of this Section, which are hereby adopted pursuant to Section 66.60(16) of the Wisconsin Statutes.

(b) Delinquent electric bills shall be levied as a special assessment against the real property, shall become a lien thereon, and placed on the tax role (sic) with the same effect as other City taxes unless the Board of Public Works otherwise determines after notice and opportunity to be heard as hereinafter set forth.

(c) An electric bill shall be deemed delinquent, if any amounts remain unpaid for sixty (60) days or more, and if delinquent, the Director of Public Works (or the City Clerk) shall send written notice to the user and to the property owner, and said notice shall state:

i. The amount of the bill and that the bill is delinquent.

ii. The bill will be specially assessed against the real property and become a lien thereon and placed on the tax role (sic) unless paid within thirty (30) days of the date of the notice.

iii. That the user and/or property owner may petition for a hearing before the Board of Public Works and the date of said hearing, which shall be less than ninety (90) days after the first issuance of the delinquent electric bill and at least five (5) days after said written notice is mailed.

(d) The Board of Public Works may instruct the Director of Public Works not to have the delinquent electric bill levied as a special assessment after the ninety (90) days from first issuing of the electric bill only in the following circumstances:

i. Payment is made, or

ii. Reasonable assurance is given by the user and/or property owner that payment will be made within a reasonable time not to exceed 45 days from the date of the hearing. If payment is not made as guaranteed, the bill amount shall be specially assessed as a lien to be placed on the tax roll after the deadline for payment set by the Board of Public Works, or

iii. The Bill is incorrect either as to amount or user and/or property owner obligated to pay and in that event, the Board shall direct the issuance of a revised billing statement.

Plaintiffs contend that the ordinance exceeds the city's statutory powers. They assert it deprives them of property without due process, denies them of equal protection of the laws and impairs the obligation of contracts, contrary to the state and federal constitutions. They find a fatal conflict between the ordinance and the rules of the Public Service Commission. Finally, they argue that the city has, in any event, failed to mitigate its damages. We reject their contentions and affirm the judgment.

The material facts are briefly stated. Plaintiffs own rental apartments, houses, trailer courts and commercial property within the city. Their tenants have separate utility meters. The city utility purchases its electric power from a supplier and resells it to customers within the city. The utility operates on a budget funded by rates to its customers, maintains its own records and accounts separate from those of the city, and is subject to the rules of the Public Service Commission.

The ordinance became effective June 21, 1979. It did not affect existing delinquent accounts. The city put on the tax rolls delinquent electric bills accruing after the effective date. It assessed delinquent bills against plaintiffs' rental properties in 1980, 1981, 1982 and 1983.

### 1. *City's Statutory Power*

The ordinance was adopted pursuant to sec. 66.60(16), Stats., which provides in pertinent part:

[(e)?] The Board of Public Works may not permit payment of the delinquent electric bill by installments.

(a) In addition to all other methods provided by law, special charges for current services rendered may be imposed by the governing body by allocating all or part of the cost to the property served. Such may include, without limitation because of enumeration, snow and ice removal, weed elimination, street sprinkling, oiling and tarring, repair of sidewalks or curb and gutter, garbage and refuse disposal, sewer service, and tree care. . . .

(b) Such special charges shall not be payable in installments. If not paid within the period fixed by the governing body, such a delinquent special charge shall become a lien as provided in sub. (15) as of the date of such delinquency, and shall automatically be extended upon the current or next tax roll as a delinquent tax against the property and all proceedings in relation to the collection, return and sale of property for delinquent real estate taxes shall apply to such special charge.

A statutory grant of powers to a municipality limits it to the exercise of those powers and to such others as are necessary to implement the powers granted. *Schroeder v. City of Clintonville,* 90 Wis. 2d 457, 464–65, 280 N.W.2d 166, 169 (1979). A municipal ordinance which fails to comply with the empowering statute is invalid. *State ex rel. Ryan v. Pietrzykowski,* 42 Wis. 2d 457, 463, 167 N.W.2d 242, 245 (1969). The meaning of the statute is a question of law which the court of appeals decides without deference to the trial court's decision. *State v. Denter,* 121 Wis. 2d 118, 122, 357 N.W.2d 555, 557 (1984).

Relying on these principles, plaintiffs argue that sec. 66.60(16), Stats., does not authorize cities to impose special charges for delinquent electric bills due a mu-

nicipal utility. They urge us to construe "special charges for current services rendered" in subsec. (a) to cover only services of the same nature as those enumerated: snow and ice removal, weed elimination, etc. They assert that the enumerated services are essentially maintenance. Since electric services are not maintenance services, plaintiffs conclude that the ordinance falls. They rely on a judicial rule of construction that if a general statutory term is followed or preceded by specifically described items, the general term is limited to items of the same class, type or nature as those specified. *State v. Engler*, 80 Wis. 2d 402, 408, 259 N.W.2d 97, 100 (1977).

We reject the proposed construction and the conclusion based upon it. A rule of construction is employed only to determine the legislative intent behind an ambiguous statute. *State v. Tollefson*, 85 Wis. 2d 162, 167, 270 N.W.2d 201, 203 (1978). Whether a statute is ambiguous is a question of law. *St. John Vianney Sch. v. Janesville Ed. Bd.*, 114 Wis. 2d 140, 150, 336 N.W.2d 387, 391 (Ct.App. 1983). Ambiguity exists if reasonable persons can find different meanings in the statute. *Kollasch v. Adamany*, 104 Wis. 2d 552, 561, 313 N.W.2d 47, 51–52 (1981).

No ambiguity exists in sec. 66.60(16), Stats. Electric services are services within the meaning of subsec. (a). Because the statute expressly covers current services "without limitation because of [such] enumeration," "current services rendered" cannot reasonably be read as limited to the class, type or nature of the services enumerated in subsec. (a). [2]

---

[2] The attorney general concludes that since sec. 66.60(16)(a), Stats., includes the phrase "without limitation because of enumera-

We conclude that sec. 66.60(16), Stats., authorizes a city to impose special charges for delinquent electric bills due a municipal utility.

### 2. Constitutionality of Ordinance

Judicial review of legislation starts with a presumption of constitutionality and the requirement that the challenger prove unconstitutionality beyond a reasonable doubt. *Quinn v. Town of Dodgeville,* 122 Wis. 2d 570, 577, 364 N.W.2d 149, 154 (1985). This is true whether the challenged legislation is a statute or an ordinance. *Village of Menomonee Falls v. Michelson,* 104 Wis. 2d 137, 142–43, 311 N.W.2d 658, 661 (Ct.App. 1981).

Plaintiffs raise three constitutional challenges: that the ordinance deprives them of property without due process of law and denies them equal protection of the laws, U. S. Const. amend. XIV; Wis Const. art. I, sec. 1, and interferes with the constitutional protection afforded contracts. U. S. Const. art. I, sec. 10; Wis. Const. art. I, sec. 12.

Plaintiffs concede that the ordinance is an exercise of the city's police power to regulate the use of property and the conduct of business. When police power legislation is challenged on due process grounds, the question is whether the means chosen have a reasonable and rational relationship to the purpose or object of the enactment. *Messner v. Briggs & Stratton Corp.,* 120 Wis. 2d

tion," the statute empowers municipalities to make electric bills owed to a municipal electric company tax liens against the property served, regardless who used the power. 73 Op. Att'y Gen. 128, 130–31 (1984).

127, 135, 353 N.W.2d 363, 367 (Ct.App. 1984). If it has, and if the object is a real and proper one, the exercise is valid.

Plaintiffs contend that police power has been unreasonably exercised because the ordinance applies to a problem that does not exist or is minimal. As they put it, the city is using an elephant gun against a gnat. They point out that the total delinquent electric bills in any year has not exceeded $8,000 to $10,000 on annual gross income of the utility exceeding $1,000,000; that only between $1,000 to $4,000 in delinquent accounts has been placed on the tax roll in any year; and that the individual delinquent accounts are small.

The judiciary is not, however, a superlegislature. *Coffee-Rich, Inc. v. Department of Agriculture,* 70 Wis. 2d 265, 269, 234 N.W.2d 270, 272 (1975). Courts do not question the wisdom or correctness of legislative determinations. *State ex rel. Strykowski v. Wilkie,* 81 Wis. 2d 491, 508, 261 N.W.2d 434, 442 (1978). The utility has actual delinquent electric bills. Whether the delinquencies are a serious problem for this particular municipal utility is for the municipality to decide. Whether the problem merits the remedy employed is for the municipality to decide. Neither decision is unreasonable on its face, and we will not interfere in the name of judicial review. We reject plaintiffs' police power contention.

Plaintiffs' equal protection challenge fails. Equal protection of the laws is denied only when the legislature makes irrational classifications. *Omernik v. State,* 64 Wis. 2d 6, 18–19, 218 N.W.2d 734, 742 (1974). The first step in equal protection analysis is to identify the

classes created by the challenged legislation. The next step is to determine whether a reasonable and practical basis exists for the classification. *State v. Bleck,* 114 Wis. 2d 454, 470, 338 N.W.2d 492, 500 (1983). Because plaintiffs have not identified the classification under challenge, they fail to show that the ordinance denies them equal protection.

Plaintiffs' argument that the ordinance interferes with their constitutional rights to contract with tenants is also unsuccessful. Standard analysis of an impairment challenge determines whether the challenged legislation impairs an existing contract, whether the impairment is substantial, and if it is, then whether the legislative purpose justifies the impairment. *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 242, 244–45 (1978). No plaintiff claims that the ordinance impairs a lease in existence when the ordinance became effective in 1979. Plaintiffs admit that much of their property is leased monthly. Because plaintiffs fail to mount the first step in the three-part analysis, we reject their impairment argument.

Plaintiffs contend that the ordinance interferes with their freedom to enter future leases. The contention has no basis. An argument addressed to contracts not yet in existence cannot rest on impairment grounds. *Allied Standard Steel Co.,* 438 U.S. at 242; *Chippewa Valley Securities Co. v. Herbst,* 227 Wis. 422, 425, 278 N.W. 872, 873 (1938). It must rest on abuse of police power. The right to contract is subject to regulation for police power purposes. *Watertown M. P. Co-op. Asso. v. Van Camp P. Co.,* 199 Wis. 379, 386, 225 N.W. 209, 211 (1929). We have already concluded that the or-

dinance has not been shown to be unreasonable exercise of the city's police power.

### 3. *Public Service Commission Rules*

Plaintiffs assert that the ordinance is at odds with the rules of the Public Service Commission. All public utilities, private or municipal, must comply with Wis. Adm. Code ch. PSC 113. Wis. Adm. Code sec. PSC 113.01(1). That chapter regulates many aspects of the relationship between a public utility and its customers but contains no definition of "customer." Plaintiffs argue that the rules contemplate that the customer is the actual consumer of electric services and the party in whose name service is billed. We accept that definition for purposes of this opinion.

We reject, however, the claim that the ordinance puts property owners in the same position as public utility customers. The ordinance merely provides that delinquent electric bills will be assessed against the real property. It does not affect the relationship between the utility and its customers with respect to deposits, Wis. Adm. Code sec. PSC 113.131, disconnection and refusal of service, sec. PSC 113.132, cold weather disconnections, sec. PSC 113.1323, reconnection of service, sec. PSC 113.1324, deferred payment agreements, sec. PSC 113.133, dispute procedures, sec. PSC 113.134, and charges and billing, secs. PSC 113.15–113.18.

Plaintiffs contend that the rules of the Public Service Commission show that electric services are rendered to persons, not to buildings, since people, not buildings, consume electricity. They conclude that the

city cannot shift responsibility for utility bills from customers to property owners merely because the latter hold title to the real estate served.

The claimed shift in responsibility has not occurred. The ordinance does not affect the customer's individual liability to the electric utility. The customer remains personally liable for delinquent electric bills, whether or not the delinquency results in a lien on the property served. If a landlord pays a delinquent bill to save the property from a lien, accepted principles of restitution permit the landlord to recover from the responsible tenant.[3]

Plaintiffs next contend that the ordinance makes the owner an unwilling collection agent for the utility and an involuntary guarantor of tenants' electric bills, contrary to Wis. Adm. Code sec. PSC 113.131(12). Under this section, a utility may collect a deposit or require a guarantor as a condition of new service only in limited situations. The apparent force of the contention disappears, however, on consideration of leasing practices.

Leases are voluntary agreements, subject only to the law. Some leases provide that the landlord pays the utilities. Others provide that the tenant pays all or

---

[3] *Compare Restatement of Restitution* sec. 103 (1937):

A person who, to prevent the lawful taking or detention of his things or to redeem his things which have been lawfully taken or detained, has discharged the duty of another in whole or in part, is entitled

(a) to indemnity from the other if, as between the two, the other should have performed such duty, or

(b) to contribution if the amount so paid is greater than the proportionate share which, as between the two, should have been borne by the person who paid.

specified utility bills. The landlord who agrees to the latter provision voluntarily assumes the role of a collection agent or guarantor of the tenant's electric bills. Even that landlord may by lease insist on a rental deposit applicable to delinquent electric bills or reserve the right to disconnect utilities if delinquencies occur.

 Plaintiffs argue generally that the ordinance must provide landlords with the same protections guarantors enjoy under Wis. Adm. Code sec. 113.131, but they rely specifically on the protections to customers against service disconnections under Wis. Adm. Code sec. PSC 114.132. Customers are protected against certain disconnections because electric service may be necessary to save human life, health and welfare. Landlords need only financial protection. Landlords are able to protect themselves in their rental agreements against accruing delinquent electric bills. We conclude that the ordinance is not inconsistent with Wis. Adm. Code sec. PSC 113.131(12).

4. *Mitigation*

Plaintiffs finally argue that the city utility must mitigate its damages before asserting its remedies against the property owner. They suggest earlier disconnections, greater use of deposits and stronger efforts to collect from delinquent tenants.

Plaintiff's position does not require us to void the ordinance. The suggested alternative remedies are available to the utility, but sec. 66.60(16), Stats., provides another alternative, and the city has decided to pursue the statutory option for its utility. Nothing requires the utility to exhaust other remedies before imposing a lien under sec. 66.60(16).

Moreover, the merits of individual tax liens are not in issue in this declaratory judgment action. Whether failure to mitigate damages will affect the amount of the recovery on an individual delinquency is not before us.

*By the Court.*—Judgment affirmed.