# WOODWARD COMMUNICATIONS, INC., f/k/a Telegraph Herald, Inc., Petitioners-Appellants,

## v.

## Wisconsin DEPARTMENT OF REVENUE, Respondent.†

Court of Appeals

*No. 87–0195. Submitted on briefs December 17, 1987.—Decided February 18, 1988.*

(Also reported in 422 N.W.2d 137.)

---

† Petition to review pending. This petition was not disposed of at the time the volume went to press. Its disposition will be reported in a later volume.

---

For the petitioners-appellants, the cause was submitted on the briefs of *Daniel W. Hildebrand* and *Thomas P. Solheim* and *Ross & Stevens, S.C.,* of Madison.

For the respondent, the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Burneatta L. Bridge,* assistant attorney general.

Before Gartzke, P.J., Eich and Sundby, JJ.

GARTZKE, P.J. Woodward Communications, Inc., appeals from an order affirming a decision of the Tax Appeals Commission. The commission affirmed the decision of the Department of Revenue to deny Woodward's petition for a redetermination of the department's assessment of sales and use taxes against Woodward for 1977 through 1979. Woodward printed shoppers guides for itself and for others. The department assessed a use tax on Woodward for supplies and materials it used to print its own shoppers guides and assessed a sales tax on the shoppers guides Woodward printed for others.

Woodward describes the questions as: (1) whether the trial court unduly deferred to the commission's construction of the statutes; (2) whether Woodward's printing shopping guides for others is a taxable

service; (3) whether Woodward's receipts from the sale of printing services for others is exempt under sec. 77.54(2), Stats. 1975, 1977, as destined for sale; (4) whether the materials and supplies Woodward used to print its own shoppers guides are subject to use tax; (5) whether Woodward is exempt from use tax for materials and supplies used to print its own shoppers guides under sec. 77.54(2); (6) whether Woodward is exempt from the use tax after July 1, 1978 under sec. 77.54(15), Stats. 1977, for supplies and materials used to print its own shopping guides; and (7) whether Woodward has been denied its rights under the United States and Wisconsin Constitutions. We answer each question other than (2) and (4) in the negative and affirm.

The facts are stipulated. Woodward is in the publishing business. Its principal office is in Iowa. Its Shopping News Division is in Platteville, Wisconsin. This division began operations in Platteville in October 1976. Between 1976 and 1978 it published and printed its own shoppers guides for communities in Wisconsin and Iowa. It sold advertising space to its customers who placed advertisements in the shoppers guides, designed and laid out the shoppers guides and printed and distributed the guides. The layout, typesetting, and paste up work for its Iowa shoppers guides was performed in Iowa, but all printing for its own shoppers guides was done at Platteville.

During the same period, the Shopping News Division also printed shoppers guides for others who published them. The division purchased supplies and materials used to produce the guides, whether for itself or for others.

The department assessed Woodward for use tax on the purchases of supplies and materials used to

print and produce its own shoppers guides. It also assessed Woodward for sales tax on the gross receipts from charges for printing shoppers guides for others.

The Commission concluded that between January 1, 1976 and June 30, 1978, Woodward's gross receipts from printing shoppers guides for others was a taxable service under sec. 77.52(2)(a)11., Stats. 1975, 1977.[1] Woodward was the consumer of the materials and supplies used in the printing and publication of its own shoppers guides and thus was subject to tax under sec. 77.53(1),[2] Stats. 1975, 1977.

---

[1]Section 77.52(2), Stats. 1975, 1977, provides in material part:

For the privilege of selling, performing or furnishing the services herein described at retail in this state to consumers or users, a tax is hereby levied and imposed upon all persons selling, performing, or furnishing such services at the rate of 3% of the gross receipts from the sale, performance, or furnishing of such services on or after February 1, 1962; but beginning on September 1, 1969 the rate of the tax hereby imposed shall be 4%.

(a)   The tax imposed herein applies to the following types of services:

. . . .

11.   The producing, fabricating, processing, printing or imprinting of tangible personal property for a consideration for consumers who furnish directly or indirectly the materials used in the producing, fabricating, processing, printing or imprinting. This subdivision does not apply to the printing or imprinting of tangible personal property which will be subsequently transported outside the state for use outside the state by the consumer for advertising purposes.

[2]Section 77.53(1), Stats. 1975, 1977, provides in material part:

An excise tax is hereby levied and imposed on the storage, use or other consumption in this state of tangible personal property or taxable services described in s. 77.52 purchased from any retailer on or after February 1, 1962, at the rate of 3% of the sales price of the property or taxable services; but beginning on September 1, 1969 the rate of the tax hereby imposed shall be 4%.

The commission further concluded that Woodward had not shown it qualified for any of the exemptions it claimed. Specifically, the commission concluded that the guides were not "destined for sale" within the sec. 77.54(2), Stats., exemption; the materials and supplies Woodward used after July 1, 1978 to print its own guides were not exempt under sec. 77.54(15), Stats. 1977.[3] The circuit court upheld the Tax Appeal Commission's decision.

### 1. *Undue Deference by Trial Court*

[3]Section 77.54, Stats. 1975, 1977, provides in material part:

There are exempted from the taxes imposed by this subchapter:

. . . .

(2) The gross receipts from sales of and the storage, use or other consumption of tangible personal property becoming an ingredient or component part of an article of tangible personal property or which is consumed or destroyed or loses its identity in the manufacture of tangible personal property in any form destined for sale . . . .

(15) The gross receipts from the sale of and the storage, use or other consumption of newspapers and periodicals regularly issued at average intervals not exceeding 3 months.

Effective July 1, 1978, the exemption in sec. 77.54(15) was amended to provide:

The gross receipts from the sale of and the storage, use or other consumption of newspapers and periodicals regularly issued at average intervals not exceeding 3 months and shoppers guides which distribute no less than 48 issues in a 12–month period. In this subsection, "shoppers guide" means a community publication delivered, or attempted to be delivered, to most of the households in its coverage area without a required subscription fee, which advertises a broad range of products and services offered by several types of businesses and individuals.

The commission also concluded that the materials and supplies Woodward used after April 1, 1978 to print its own guides which were distributed outside Wisconsin did not meet the sec. 77.54(25) exemption. This conclusion is not at issue in this appeal.

Whether the trial court unduly deferred to the commission's construction of the sales and use tax statutes is immaterial to our review. As the supreme court said in *Hall Chevrolet Co., Inc. v. Dept. of Revenue,* 81 Wis. 2d 477, 483, 260 N.W.2d 706, 709 (1978), "When material facts are not in dispute and only matters of law are in issue, this court may review the record *ab initio* and substitute its judgment for that of the Tax Appeals Commission."

2. *Tax on Shoppers Printed for Others*

Woodward argues that its printing of shoppers guides for others is not the sale of a service under sec. 77.52(2)(a)11., Stats. 1975, 1977. The statute taxes the retail sale of the service of printing tangible personal property. Woodward advances two theories: first, it sells advertising rather than tangible personal property; second, even if tangible personal property is sold, the sale is not at retail.

To support its first theory, Woodward relies on *Janesville Data Center v. Dept. of Revenue,* 84 Wis. 2d 341, 267 N.W.2d 656 (1978). The *Janesville* court held that the sale of keypunch cards, prepared to contain data furnished by the customer, was not subject to sales tax. The court reasoned that although tangible personal property in the form of cards was transferred, the essence of the transaction was the purchase of data, an intangible which could be transmitted by telephone or other means as well as by cards. 84 Wis. 2d at 346, 267 N.W.2d at 658.

The *Janesville* case is not in point. Advertising is intangible, in the sense that it is an idea transmitted by the advertiser to potential customers. The advertiser, however, chooses among many available ways to

transmit the idea, depending on the advantages and disadvantages of each. To equate a television advertisement with a printed handout, for example, would ignore the reasons why one advertiser uses television and another the handout. The physical form of the shoppers guide is essential to the advertising it contains. Consequently, the sale of Woodward's shoppers guides is the sale of the service of printing of tangible personal property under sec. 77.52(2)(a)11., Stats. 1975, 1977.

As Woodward notes, printing is recognized as manufacturing under Wis. Adm. Code secs. Tax 11.39(1) and (3)(x) and 11.41(1)(b). These administrative code provisions recognize printing as manufacturing for purposes of the exemption in sec. 77.54(2), Stats. This provision exempts manufacturers from paying sales tax on raw materials. This exemption is irrelevant to Woodward's liability under sec. 77.52(2)(a)11. for its printing service. Because printing tangible personal property is expressly taxed under sec. 77.52(2)(a)11., the statutory and regulatory provisions generally applicable to manufacturers are irrelevant to the issues before us.

We turn to Woodward's second theory, that the sale is not a retail sale. Section 77.52(2)(a)11., Stats., taxes the sale of printing services "at retail." Woodward relies on *Dept. of Revenue v. Milwaukee Refining Corp.*, 80 Wis. 2d 44, 257 N.W.2d 855 (1977), in which the sales of gold alloys to dentists for ultimate installation in patients' mouths were held not to be retail sales.

Section 77.51(4), Stats. 1975, 1977, defines "sale at retail" as "the transfer of the ownership of, title to, possession of, or enjoyment of tangible personal prop-

erty or services for use or consumption but not for resale as tangible personal property or services ...." Subsection (4) includes:

> (k) Any sale of tangible personal property to a purchaser even though such property may be used or consumed by some other person to whom such purchaser transfers the tangible personal property without valuable consideration, such as gifts, and advertising specialities distributed gratis apart from the sale of other tangible personal property or service.

Section 77.51(4) does not define "resale." However, by virtue of subsec. (k), the transfer by Woodward's purchasers of the shopping guides to members of the public free of charge does not prevent Woodward's sales from being retail sales.

*Milwaukee Refining* is not on point. In *Milwaukee Refining,* two sales occurred: the sale to the dentist and the sale by the dentist to the patient. Here only one sale occurred: the sale by Woodward of its printing service to its customers. Under sec. 77.51(4)(k), Stats., the subsequent use or consumption by persons to whom Woodward's customers transferred the shoppers guides free of charge does not affect the nature of the sale by Woodward of its printing service as a "retail sale."

    3. *"Destined for Sale" Sales Tax Exemption*

Woodward next contends that the shoppers guides it printed for others before July 1, 1978 are exempt under sec. 77.54(2), Stats., as "destined for sale" since its purchasers "resold" the guides. That statute does not define "destined for sale." Woodward points out, however, that under sec. 77.51(4), a sale includes "the transfer of the ownership of, title to, possession of, or

enjoyment of tangible personal property or services for use or consumption but not for resale as tangible personal property or services ...." We disagree with Woodward's reasoning.

We have already held that Woodward's sale of its shopping guide printing services to others is a sale under sec. 77.52(2)(a)11., Stats. 1975, 1977. The sale is at retail, by virtue of the general language in the introductory paragraph to sec. 77.51(4), and the specific provision in subsec. (k), which includes in a retail sale a transfer without a valuable consideration. To hold that sec. 77.51(4) not only makes Woodward's sale to its purchasers a retail sale but also makes the same sale exempt as "destined for sale" would, as the state points out, render sec. 77.51(4)(k) meaningless. The same section would both cause the tax to be imposed and exempt the transaction from the tax, an absurd result.[4]

4. *Use Tax on Materials for Woodward's Own Guides*

Woodward argues that its use of materials and supplies to print its own shoppers guides is not a use or consumption of tangible personal property under sec. 77.53(1), Stats. 1975, 1977, since it used the materials and supplies to make tangible personal property "destined for sale." We reject Woodward's "destined for sale" contention for the same reasons we

[4]Judge Sundby reasons that Woodward's construction of sec. 77.54(2), Stats., would exempt from the sales and use tax the entire process of producing and marketing shoppers' guides, from the purchase of the printers' ink to ultimate distribution, that such a broad exemption can only be created by express language, and that sec. 77.54(2) does not contain such express language.

have stated above. That Woodward gives away its own shoppers guides free of charge does not constitute a resale.

5. *Manufacturers Exemption from Use Tax*

Woodward contends that it is exempt from the use tax under sec. 77.54(2), Stats. 1975, 1977, because it used materials or supplies to manufacture tangible personal property "destined for sale." For reasons previously stated, we have held that the shoppers guides Woodward prints for itself or others are not "destined for sale." The exemption Woodward relies on does not apply.

6. *Materials Woodward used after July 1, 1978*

Effective July 1, 1978, sec. 77.54(15), Stats. 1977, exempts from taxation "[t]he gross receipts from the sale of and the storage, use or other consumption of ... shoppers guides ...." Woodward argues that this exemption applies to the materials and supplies Woodward used to print its own shoppers guides. We disagree.

Section 77.54(15), Stats. 1977, as amended, exempts shoppers guides from the sales and use tax, but not the materials and supplies used to print shoppers guides. Because the statute is silent with respect to materials and supplies, and because we must strictly construe an exemption against the taxpayer, *Revenue Dept. v. Greiling,* 112 Wis. 2d 602, 605, 334 N.W.2d 118, 120 (1983), we conclude that the materials and supplies Woodward used on and after July 1, 1978 were not exempt from the use tax.[5]

---

[5]Section 1284d, 1983 Wis. Act. 27, effective July 2, 1983, exempts from the use tax under sec. 77.54(2m) materials and

### 7. *Constitutionality of Sec. 77.54(15), Stats.*

While all statutes are presumed to be constitutional, the presumption of constitutionality of a tax statute is the strongest. *Simanco, Inc. v. Department of Revenue,* 57 Wis. 2d 47, 54, 203 N.W.2d 648, 651–52 (1973). Only if the challenger shows that the classification is arbitrary and has no reasonable purpose will a legislative classification fall. *Department of Revenue v. Moebius Printing Co.,* 89 Wis. 2d 610, 625, 279 N.W.2d 213, 219 (1979). Establishing doubt as to an act's constitutionality is insufficient. *Quinn v. Town of Dodgeville,* 122 Wis. 2d 570, 577, 364 N.W.2d 149, 154 (1985). The court "indulges every presumption and will sustain the law if at all possible." *Id.*

Woodward argues that the commission's construction of sec. 77.54(15), Stats., causes an unconstitutional classification under our state and federal due process and equal protection provisions. Woodward asserts that it is irrational to impose a use tax on persons such as Woodward who print and publish their own shoppers guides but exempt persons who engage others to print and publish their shoppers guides.[6] Again we disagree.

Before the 1978 amendment to sec. 77.54(15), Stats., both classes were equally treated. The person who prints and publishes its own shoppers guide paid a use tax under sec. 77.53(1) on materials and supplies it consumed and was not exempt under sec. 77.54(15).

---

supplies used to print shoppers guides. That amendment is ineffective as to materials and supplies Woodward used to print shoppers guides before July 2, 1983.

[6]Woodward refers to persons in the latter class as its competitors, even though, as we have seen, certain of its customers are members of that class.

The person who had another print and publish its shoppers guides was not subject to but ultimately paid the sales tax, since the printer could collect it from that person. Secs. 77.52(2)(a)11., 77.52(3).

The 1978 amendment affects the sales tax exemption in sec. 77.54(15), Stats. The person who prints and publishes its own shoppers guide continues to pay a use tax under sec. 77.53(1). The amendment to the sales tax exemption divides persons who have others print and publish their shoppers guides into two classes: those who distribute no less than forty-eight issues in a twelve-month period and those who distribute less. A sale to persons who distribute forty-eight issues or more is exempt. A sale to persons who distribute less than forty-eight issues is not exempt, and they therefore ultimately pay sales tax. Sec. 77.52(3). The constitutional issue does not arise if Woodward's class is compared with the class consisting of those who publish less than forty-eight issues, since those classes bear the same tax impact.

The record is silent, however, as to whether after July 1, 1978, Woodward distributed no less than forty-eight issues in a twelve-month period. Because of the strong presumption favoring constitutionality and Woodward's failure to show that the post-July 1, 1978 classification disparately treats Woodward, its challenge to the commission's construction of sec. 77.54(15), Stats., also fails.

*By the Court.*—Order affirmed.