CORNELL UNIVERSITY, Plaintiff-Respondent,†

v.

RUSK COUNTY, Defendant-Appellant.

Court of Appeals

*No. 91-0581. Submitted on briefs December 4, 1991.—Decided January 14, 1992.*

(Also reported in 481 N.W.2d 485.)

†Petition to review denied.

812

813

On behalf of the defendant-appellant, the cause was submitted on the brief of and orally argued by *Steven P. Anderson,* corporation counsel, of Ladysmith.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Jeffrey L. Abraham, John A. Busch* and *Chris J. Trebatoski,* and orally argued by *John A. Busch* of *Michael, Best & Friedrich* of Milwaukee.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Rusk County appeals a declaratory judgment in favor of Cornell University. The judgment declared that privately owned mineral interests are subject to taxation separate from the surface land under sec. 70.32, Stats. The judgment further declared that the issuance of a tax deed for the surface owner's delinquent property taxes does not extinguish the property rights of the mineral interest owner.

Rusk County asserts that the trial court erred because Wisconsin has a unitary taxing system in which the mineral interests are taxed as part of the value of the surface land and not separate from it. Rusk County next contends that when a tax deed is issued, all interests in the property are transferred to the county except those interests specifically exempted by statute. It asserts that because privately owned mineral interests are not specifically exempted by statute, a tax deed extinguishes the proprietary interest of the mineral owner.

Cornell, however, argues that if we decide that Wisconsin has a unitary taxing system and that a tax deed extinguishes its ownership interest in the minerals, such a scheme violates its constitutional right to due process. We conclude that sec. 70.32, Stats., establishes a system whereby privately owned mineral interests are taxed to the surface owner as part of the total value of the prop-

erty and that a tax deed extinguishes the proprietary interest of the owner of mineral rights. We also conclude that the statutory scheme establishing this process gives Cornell all the process that it is due under the constitution. Accordingly, the judgment is reversed.

The facts in this case are undisputed. Cornell owns an undivided one-half fee simple interest in minerals in a 160-acre parcel in Rusk County. The surface land is owned by someone else. The surface owner of the property failed to pay real property taxes on the land for the years 1985 through 1989.

In 1986, pursuant to sec. 74.57, Stats., the Rusk County clerk issued a tax certificate to Rusk County for the delinquent taxes. Under the tax delinquency statutes, three years from the issuance of the tax certificate, Rusk County could apply for a tax deed that would transfer ownership of the land to it. Accordingly, in 1989 Rusk County applied for a tax deed and issued a written Notice of Application for Tax Deed to Cornell and the surface owner.

Subsequent to the filing of the notice, the surface owner paid the 1985 taxes, thus redeeming the land and avoiding the issuance of a tax deed for the 1985 tax liability. However, tax certificates for the years 1986, 1987 and 1988 remain outstanding, making the property subject to the issuance of a tax deed based upon nonpayment of taxes for those particular years.

Initially, Cornell University brought this suit seeking both injunctive and declaratory relief. The intervening payment of the 1985 taxes made the injunctive relief unnecessary. However, because of the delinquent taxes for 1986, 1987 and 1988, the portion of the action seeking declaratory relief proceeded. Cornell asked the court to declare that (1) privately owned mineral interests are subject to taxation separate from the surface land; and

(2) a tax deed issued for delinquent property taxes does not divest the mineral interest owner of his rights in the land. The trial court agreed and granted relief to Cornell. It is this declaratory judgment that Rusk County appeals.

First, we address whether privately owned mineral interests are subject to taxation separate from the tax assessed against the surface land. Wisconsin's constitution has vested its taxing power in the legislature. Article VIII, § 1 of the Wisconsin Constitution states:

> The rule of taxation shall be uniform but the legislature may empower cities, villages, or towns to collect and return taxes on real estate located therein by optional methods. Taxes shall be levied upon such property with such classifications as to forests and minerals including or separate or severed from the land, as the legislature shall prescribe.

Therefore, we must examine the statutes to determine if the legislature has classified mineral interests in such a manner that they are subject to separate taxation from the land.

The resolution of this issue involves statutory interpretation. Statutory interpretation presents a question of law that we review de novo. *State v. Michels,* 141 Wis. 2d 81, 87, 414 N.W.2d 311, 313 (Ct. App. 1987). When interpreting a statute we first look to the language of the statute to determine if it is ambiguous.

Section 70.32, Stats., sets up the manner in which property taxes will be assessed. It provides:

> Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual provided under s. 73.03(2a) from actual

view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale. *In determining the value the assessor shall consider, as to each piece, its advantage or disadvantage of location, quality of soil, quantity of standing timber, water privileges, mines, minerals, quarries, or other valuable deposits known to be available therein, and their value;* but the fact that the extent and value of minerals or other valuable deposits in any parcel of land are unascertained shall not preclude the assessor from affixing to such parcel the value which could ordinarily be obtained therefor at private sale. *If on the assessment date* occurring in 1957 or in any year thereafter *any person other than a governmental unit of Wisconsin owns real estate in which a Wisconsin governmental unit has retained mineral rights, timber rights or an easement or any similar interest in such real estate, the value of any such retained right shall be eliminated in determining the assessable value of such property, and such retained interest shall be excepted in the assessment description of such land and in any notice, tax certificate or tax deed following any such assessment.* (Emphasis added.)

The county argues that this statute clearly sets up a unitary taxing system with respect to land and mineral interests except in the case where the government is the owner of the mineral rights.

There is no question that sec. 70.32, Stats., standing alone, unambiguously establishes a unitary taxing scheme. *Schmidt v. Town of Almon*, 181 Wis. 244, 194 N.W. 168 (1923). In *Schmidt*, the property owner protested payment of the portion of taxes on her land that were attributable to the standing timber. The timber rights were owned by another person. The taxpayer

818

argued that the person who owned the timber rights should have the duty to pay the taxes attributable to the timber. The court rejected this argument stating:

> Section 70.32 prescribes the method to be followed by the assessor in the valuation of the real estate, and the elements of value to be taken into consideration in arriving at the assessment. Among such elements is the existence of standing timber upon the land. When such valuation shall be fixed as a result of a compliance with the provisions of section 70.32, the assessment must be levied as a unit against the real estate, and the timber itself constitutes but an element of the value of the real estate proper, namely, the land. So that . . . a legislative intent is made manifest for the assessment of land as a unit, and not for a separate assessment against the owner of standing timber.

*Id.* at 247, 194 N.W. at 169.

Cornell, however, directs our attention to sec. 706.057(2)(d), Stats., which provides a procedure for the establishment and lapse of mineral interests. The statute provides that a mineral interest is "used" if "property taxes are paid on the interest in minerals by the owner of the interest in minerals." Cornell argues that this statute acknowledges a separate tax to be assessed against mineral interests.

It is possible for an ambiguity to be created by the interaction of two separate statutes. *In re Walker's Estate,* 75 Wis. 2d 93, 102, 248 N.W.2d 410, 414 (1977). "Statutes relating to the same subject matter are to be construed together and harmonized." *State v. Burkman,* 96 Wis. 2d 630, 642, 292 N.W.2d 641, 647 (1980).

Cornell, however, offers us no way to harmonize the idea contained in sec. 706.057(2)(d), Stats., with sec.

70.32, Stats. It merely argues that the legislature evinced its intent to tax minerals separately by enacting sec. 706.057(2)(d).

We conclude that the only way to harmonize these statutes is to read them in the manner offered by the county. Rusk County submits that sec. 706.057(2)(d), Stats., contemplates protection of an owner of mineral interests who contracts with the surface property owner to pay the taxes attributable to the mineral interests on the property. Such an agreement, once complied with, would protect the mineral interest owner from having his rights lapse due to non-use. Thus, the county argues that there is no conflict between this idea and the unitary tax system set forth in sec. 70.32, Stats.

The county's reconciliation of these two statutes is supported by *Schmidt.* The court suggested in *Schmidt* that the property owner contract with the owner of the timber interests to recover that portion of the taxes attributable to the value of the timber. The court recognized that:

> Those engaged in the lumbering industry, as a rule, had no occasion to use the land itself excepting in so far as it was necessary in the removal of the timber, and the owners of the naked lands therefore realized . . . that provision should be made for an assumption on the part of the purchaser of the timber of a reasonable share of the taxes, and so the subject here involved generally has become and is now recognized as a proper basis for a contract relation.

*Id.* at 252, 194 N.W. at 170. Based on the language of the statutes and the reasoning in *Schmidt,* we conclude that sec. 706.057(2)(d), Stats., does no more than protect an owner of mineral interests, who enters into such a con-

820

tract to pay property taxes to the surface owner, from lapse of his interest due to non-use.

Cornell attempts to distinguish *Schmidt,* claiming that there is a fundamental difference between the nature of timber interests and mineral interests. In its brief, Cornell argues:

> The crucial distinction between timber rights and mineral interests is that timber rights, in whatever form, represent an interest in land that is subordinate to the fee interest of the surface owner, while a mineral interest owner has a fee simple interest in the minerals, and such real property interest is distinct from and not subordinate to the fee interest in the surface land.

██ This distinction, assuming that it is a valid one, has no significance to our analysis. The question is whether the legislature chose to tax timber and mineral interests in different manners. Under sec. 70.32, Stats., the legislature answers this question by grouping mineral interests in the same category as timber interests for purposes of taxation.

In addition, Cornell argues that because mineral interests are defined in sec. 706.01(7m), Stats., as "fee simple" interests, they must be assessed separately from the surface land as "real property" under sec. 70.32, Stats. To interpret the statutes otherwise, asserts Cornell, would render sec. 706.01(7m) superfluous. We are not persuaded.

██ The definition of mineral interests serves purposes other than those associated with tax collection. The fee simple interest in minerals enables a person to record, inherit, or otherwise convey interests in minerals. *See Chicago & N.W. Transp. v. Pedersen,* 80 Wis. 2d 566,

571, 259 N.W.2d 316, 319 (1977). Therefore, we conclude that our interpretation of sec. 70.32, Stats., is consistent with sec. 706.01(7m), Stats., and does not render it superfluous.

We conclude that the legislature established a unitary taxing scheme under sec. 70.32, Stats. In *Schmidt,* the court expressed the inherent difficulties that would arise if timber interests were to be taxed separately. It stated:

> To require a separate tax to be levied on the standing timber would create a situation whereby the collection of a tax in many instances would become impossible. Large portions of the timber interests in this state have been held by nonresidents, and where the timber, by such nonresidents, is caused to be removed from the land, an enforcement of the collection of the tax would often be utterly impossible.

*Id.* at 249-50, 194 N.W. at 169-70. This observation is equally applicable to mineral interests. Therefore, before we will conclude that the legislature intended to significantly alter the manner in which property taxes are assessed in Wisconsin, we require a more unequivocal statement from the legislature. We will not use implications drawn from two other statutes to create the result that does not appear in the plain language of sec. 70.32.

Next, we address whether a tax deed issued in connection with a tax delinquency proceeding against the surface property owner divests the mineral interest owner of his rights in the property. Section 75.14(1), Stats., governs this question. It provides in relevant part:

> If any land subject to a tax certificate shall not be redeemed the county clerk shall . . . execute . . . to

the county . . . a deed . . . and shall acknowledge the same which shall vest in the county an absolute estate in fee simple in such land subject, however, to recorded restrictions and redemption as provided in this chapter . . ..

Therefore, only those interests specifically exempted in the statutes from operation of a tax deed are not transferred to the county upon issuance of a tax deed. *See Leciejewski v. Sedlak,* 116 Wis. 2d 629, 342 N.W.2d 734 (1984).

■

In *Leciejewski,* the court considered whether the title the plaintiffs acquired from the county following a tax lien foreclosure, defeated the defendant's claim of ownership based on adverse possession that arose prior to the judgment of foreclosure. The court concluded that the plaintiff's title defeated the defendant's adverse possession ownership claim. The court explained that "[a] tax deed is not derivative, but creates a new title that extinguishes all former titles and liens not expressly exempted from its operation." *Id.* at 639, 342 N.W.2d at 739. Because mineral interests are not expressly exempted in the statutes from the operation of a tax deed, the owner of such interests is divested of his rights upon issuance of a tax deed.

Because we conclude that in Wisconsin a tax deed extinguishes the mineral interest owner's proprietary interest, we must next address whether the unitary tax system offends constitutional due process guarantees because it could divest the mineral interest owner of his rights due to nonpayment of taxes by the surface property owner. Cornell asserts that Wisconsin's statutory scheme violates both procedural and substantive due process.

"While all statutes are presumed to be constitutional, the presumption of constitutionality of a tax statute is the strongest." *Woodward Communications v. DOR,* 143 Wis. 2d 512, 523, 422 N.W.2d 137, 141 (Ct. App. 1988). The burden is on the challenger to prove unconstitutionality beyond a reasonable doubt. *Lasarkis v. City of Wisconsin Dells,* 131 Wis. 2d 525, 533, 389 N.W.2d 67, 71 (Ct. App. 1986). "Establishing doubt as to an act's constitutionality is insufficient." *Woodward,* 143 Wis. 2d at 523, 422 N.W.2d at 141.

First, we address Cornell's claim that the statutes relating to the issuance of a tax deed deny it procedural due process. Procedural due process requires that a party whose rights may be affected by government action be given "an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right for which the constitutional protection is invoked." *Neylan v. Vorwald,* 124 Wis. 2d 85, 90, 368 N.W.2d 648, 651 (1985) (quoting *Anderson Nat'l Bank v. Luckett,* 321 U.S. 233, 246 (1944)).

Cornell does not argue that the notice procedure is deficient. In addition, Cornell received actual notice of the application for issuance of a tax deed in this case. Therefore, we do not address the constitutionality of the statutory notice procedure in the issuance of a tax deed.

Cornell argues that it has no meaningful opportunity to be heard. It asserts that the statutes do not provide a hearing for it to contest the issuance of the deed or the nonpayment of real estate taxes. However, the right to a hearing does not necessarily have to come from a statute. Cornell has the right, at common-law, to various remedies before the state can deprive it of its prop-

erty interest. As evidenced in sec. 75.61, Stats., the tax statutes in Wisconsin contemplate the use of such common-law procedures. Section 75.61 provides a time limitation on various types of actions related to tax certificates including "every action or proceeding to set aside any inclusion of land in a tax certificate for the nonpayment of taxes, or to cancel any tax certificate, or to restrain the issuing of any tax certificate, or tax deed, for any error or defect going to the validity of the assessment, and affecting the groundwork of such tax, or on account of any void or defective special assessment . . .." The existence of these remedies adequately provides Cornell with an opportunity to be heard on factors central to the issuance of the tax deed and defeats Cornell's procedural due process challenge.[1]

Next, we address Cornell's argument that the unitary tax system violates substantive due process requirements by providing that the mineral interest owner's rights in the property are extinguished when the surface owner fails to pay the property taxes. We first note that the Wisconsin Constitution specifically authorizes the legislature to tax mineral interests as one with the land if it so chooses. Wis. Const. art. VIII, § 1. Therefore, no substantive due process challenge lies under the Wisconsin Constitution because the legislature has done exactly what it is constitutionally authorized to do.

We must, however, still look to the federal constitution to determine whether Wisconsin's unitary tax scheme and enforcement procedures violate federal substantive due process. The test for substantive due process is whether the statutes have a reasonable and

---

[1]We do not consider whether the procedures that come before the application for a tax deed provide Cornell with adequate due process because that issue was not raised or briefed.

rational relationship to their purpose, and whether the purpose is a proper one. *Oliver v. Travelers Ins. Co.,* 103 Wis. 2d 644, 647, 309 N.W.2d 383, 385 (Ct. App. 1981).

Section 70.32, Stats., provides the manner in which property taxes will be assessed in Wisconsin. Section 75.14, Stats., challenged by Cornell as unconstitutional, is designed to facilitate property tax collection. There is no dispute that property tax collection is a proper purpose that the government is entitled to pursue.

Remaining, then, is the question whether sec. 75.14, Stats., has a reasonable and rational relationship to its purpose. We conclude that it does. The legislature set up a system whereby one value is assigned to the entire property for tax assessment purposes regardless of the number of separately owned interests that may exist. The surface property owner is the person against whom this entire value is assessed. The state holds the surface owner responsible for the payment of taxes and then leaves it up to the individual owners of various interests to decide and provide amongst themselves for the division and apportionment of these taxes and to pursue relief against the owners of the other interests when necessary.

Cornell argues that the state is constitutionally required to assess each interest in the property separately and effect collection against each separate owner. The complexities and difficulties that accompany such a system were articulated by the court in *Schmidt. Id.* at 249-50, 194 N.W. at 169-70. The timber rights on one piece of real estate might be owned by one person, while the mineral rights are owned by another, the water rights by another, and the surface land by yet another. The procedure set up by the state merely shifts the bur-

den of allocating the proper share of taxes to the individual owners of a single piece of real estate. This system was designed to avoid the complexities that would exist if separate assessments against each interest were made. Because this procedure bears a reasonable and rational relationship to the enforcement of property tax collection, we conclude that the state is not constitutionally required to maintain the system suggested by Cornell.

Cornell also has the ability to protect its interest in the property, both prior to and after application for issuance of the tax deed, by paying the delinquent property taxes, thus redeeming the property. *See* sec. 75.01(1)(b), Stats. Cornell argues that it is too burdensome to require it to pay the property taxes in their entirety to protect its interest. This scheme is no more burdensome than the surface property owner's duty to pay the taxes attributable to the mineral interest in the first instance, and that scheme was found to be valid in *Schmidt.*

Moreover, as the state points out:

> [T]he Fourteenth Amendment does not in terms or in effect prohibit unwise taxes, merely because they are unwise, or unfair or burdensome taxes, merely because they are unfair or burdensome. The wisdom or fairness of the tax before us are not matters subject to our control or revision. We are only concerned with the power of the state to lay the tax.

*3M Co. v. Wisconsin Dept. of Taxation,* 322 U.S. 435, 444 (1944). Hence, we do not review the wisdom of the legislature's scheme.

In addition, Cornell has the ability to lessen the burden or unfairness, as discussed earlier, by contracting with the surface owner to apportion property taxes and guarantee their payment. *See Schmidt; see also*

827

*Lasarkis.* Such a contract would increase the array of remedies available to Cornell.

In *Lasarkis,* the city enacted an ordinance that empowered the city to execute a lien against an owner's property where a tenant's electric bill was not paid. Despite the plaintiff's argument that the ordinance made the owner an unwilling collection agent for the utility and an involuntary guarantor of the tenant's electric bill, the court held that such a result was not improper and ultimately upheld the ordinance as constitutional. The court reasoned that the landlord could insist on a rental agreement with the tenants to ensure payment of electric bills. *Id.* at 537–38, 389 N.W.2d at 72–73. Similarly, a mineral interest owner can at the time of acquisition or reservation of mineral rights or any time thereafter, negotiate an agreement with the surface property owner to guarantee the payment of property taxes.

We do not foreclose the possibility that additional common-law remedies may exist which the mineral interest owner who pays the entire property taxes in order to protect his interest in the property may pursue against the surface property owner. However, we need not decide that question here because we conclude that the rights available to Cornell already enumerated sufficiently satisfy due process.

Finally, we address Cornell's assertion that *Doherty v. Rice,* 240 Wis. 389, 3 N.W.2d 734 (1942), requires a contrary result. Because of a decisive difference between *Doherty* and this case, *Doherty* does not control. In *Doherty,* the court discussed the idea that if an easement were cut off by a tax sale of the servient estate, the owner of the dominant estate would be deprived of his property without due process. *Id.* at 400, 3 N.W.2d at 738. The court based its assertion on the fact that easements were excluded from the assessment of the servient estate.

Thus, property rights that were not assessed in a piece of real estate could not be sold for delinquent taxes. *See Tax Lien Co. v. Schultz,* 106 N.E. 751, 752 (N.Y. 1914) (relied on by the court in *Doherty*). Here, however, mineral rights are included in the assessment of the real estate. Section 70.32, Stats. Therefore, *Doherty* is inapposite.

Cornell also cites *Lien v. Simons,* 522 F. Supp. 712 (D. Mont. 1981), in support of its position. However, it can be distinguished on the same basis as *Doherty.* After concluding that Montana does not tax mineral interests, the court found that it would be unconstitutional for a deed obtained through a tax sale to extinguish the mineral interest owner's rights. Mineral interests are taxed in Wisconsin, therefore *Lien* does not affect our analysis.

Due to the strong presumption of constitutionality we afford to tax statutes, the state's legitimate interest in assessing a single piece of real estate as one unit and the remedies available to an aggrieved owner of a separate interest in the real estate, we conclude that Wisconsin's unitary tax system and tax deed enforcement procedure comply with substantive due process.

*By the Court.*—Judgment reversed.